JAMES W. HORNE & wife *vs.* WILLIAM MEAKIN & another.

Suffolk.   March 4. — June 26, 1874.   WELLS & ENDICOTT, JJ., absent.

Under the Gen. Sts. *c.* 129, § 41, an amendment may be allowed at any time before final judgment.

If during the trial of a cause the court rules that the plaintiff cannot recover on his declaration, and allows him to amend, and suggests that the trial proceed and that the amendment be filed thereafter, and no objection is made to this course, it is too late to object at the argument in this court that the amendment was not filed until after the verdict.

It is not a violation of the Gen. Sts. *c.* 84, relating to the observance of the Lord's day, for a husband and wife to hire a horse and wagon to attend the funeral of the husband's brother-in-law.

It is the duty of a livery stable-keeper to provide a horse suitable for the purpose for which it is let, and on the question of his liability for an injury caused by the horse's running away it is immaterial that he did not know that the horse was unsuitable.

When a stable-keeper lets a horse to A., knowing that it is to be used by A.'s son to take his family to a funeral, he is liable to the son and any member of the son's family, for an injury caused by the unsuitableness of the horse for the purpose for which it was hired.

When an accident is caused in part by the fault of a horse unsuitable for the purpose for which it is let, and in part by a defect in the highway, the stable-keeper who let the horse will be liable for the damage to the parties injured.

If a person hires of a stable-keeper and by mistake takes a horse not intended for him, and the stable-keeper, knowing that he has taken the horse, and the purpose for which he intended to use it, does not make a reasonable effort to notify him of his mistake, he will be liable for any damage caused by the unsuitableness of the horse for the purpose for which it was used.

TORT with a count in contract to recover damages for an injury to the female plaintiff, by being thrown from the defendants' carriage.   Trial in the Superior Court before *Putnam,* J. who allowed a bill of exceptions in substance as follows :

The case was submitted to the jury only upon the amended count in tort hereafter mentioned. It appeared in evidence that on Saturday, June 29, 1872, the father of James Horne, one of the plaintiffs, who lived in Canton, went to the defendants, who keep a livery stable in Canton, and engaged a horse and carriage for his son, to be used in a funeral procession for the next day. The deceased was the husband of a sister of the plaintiff, James. The plaintiffs, their child, and its grandmother rode in the carriage on Sunday from the house to the graveyard, and, on their return home, after stopping on the way at the house of a friend to get a glass of water, the horse became frightened at some object and ran away. The carriage was broken, and the female plaintiff was thrown out and injured. Notice was thereupon sent to one of the defendants, who came and took home his horse and carriage.

The father testified that as agent of his son, who had requested him to hire a horse for him to go to the funeral, he went to the defendants' stable and engaged a horse for his son, kind and gentle, to go in a funeral procession with his family on the next day, Sunday.

The plaintiff James testified that he did not send his father to these defendants to engage the team. The father testified further that he went on Sunday to the stable and got the team, which was delivered to him by one of the defendants', the same one of whom he had engaged the horse and carriage, and the same team which he had engaged the day previous, and drove it to his son's house, when his son took it and went with his family to the funeral ; that the man told him the horse was good and gentle, and would stand without hitching. The plaintiff, James, testified that on the way home the horse became frightened from some cause unknown to him, and ran at great speed across two railroad tracks, and the carriage then upset and threw them out; that he was used to driving a horse, and exercised due care. The plaintiffs also offered evidence tending to show that the horse had run away the day previous and on other occasions before and after the accident, that he was easily frightened, and would run away apparently without any reason, and that he was not a suitable horse to be let for the purpose indicated. The plaintiffs also offered evidence of the insecurity of the carriage.

The defendants offered evidence conflicting with that of the plaintiffs, and also tending to show that they had contracted with the father on Saturday, for a horse for him, but not for his son, and a different horse from the one which the plaintiffs had ; that the father came on Sunday and asked for the horse which had been engaged, and while they were harnessing him, the father took a horse and carriage standing in the yard, which had been engaged by another person, supposing that it was the one intended for him, and without the knowledge or consent of the defendants, or any of their servants ; that when the horse engaged by the father was got ready, they brought him out, and found that the father had driven off with the wrong horse.   The defendants offered further evidence tending to show that the horse which the father took was kind and gentle, and also suitable for the purpose, and had been often driven by ladies ; that the carriage had just been repaired ; and this was the first time it had been out of the stable since its repair, and that it was in good order, and suitable for the purpose, and contended that the immediate cause of the overturning of the vehicle, was owing to the unevenness of the highway, or to the want of skill and proper care of plaintiffs, and through no fault of the defendants, or their horse, or carriage. There was also some evidence tending to show that the horse was frightened by a dog, and that the female plaintiff also took hold of the reins and her husband's arm, and that the horse was not properly managed.

After the plaintiffs' evidence was in, the court ruled at the request of the defendants, that the plaintiffs could not maintain their action on the original count in contract, or the count in tort ; that they could recover in tort, on a count properly framed, and that the plaintiffs might amend their count in tort upon proper terms in conformity with this opinion.

The court intimated the form in which the amended declaration should be drawn, which was substantially as it was afterwards drawn, and, as it would take time to draw such an amendment, the court suggested that the trial had better proceed, and the amendment might be afterwards filed.   No objection or exception was taken to this by the counsel for the defendants.   The amended count was however in fact not filed or shown to the defendants' counsel, until the day after the verdict.

The court instructed the jury, upon the whole evidence, that, the defendants being public stable-keepers in the town of Canton, if the plaintiff, James W. Horne, hired of them, through his father, a horse and carriage for the purpose of taking himself and his family to the funeral, they were bound to furnish him with a horse and carriage reasonably safe for such a purpose ; that if the horse was not a safe horse, but was accustomed to run away without any apparent cause, and the plaintiff was himself a careful driver, and exercised due care on this occasion, and the accident would not have happened except for the fault of the horse in the particular named, the plaintiff could recover in this action, upon the amended count which was to be filed, for the injury occasioned to his wife. To these instructions, and to others given in explanation of them to the jury, no exception was taken.

The defendants then requested the court to rule : 1. That the accident occurring on the Lord's day, the plaintiffs could not recover. The court declined so to rule.

2. That the plaintiffs to recover, must show that the horse was not a suitable one to be let under the circumstances. [And, if the jury find he was unsuitable, the plaintiffs cannot recover unless they prove that the defendants knew the horse was thus unsuitable.] The court gave all of this ruling but the portion in brackets, but declined to give that part, and ruled that whether the defendants knew or not that the horse was unsuitable, was immaterial, and of no consequence under the amended count.

3. That if the jury find that the horse was let to the father, and the credit given to him, the plaintiffs cannot recover damages in this action. The court so ruled, and added the words, " unless the jury find it was hired by the father for the use of the son, and that the defendants knew that it was to be used by the son to take his wife and family to the funeral."

4. If the jury find that the highway was defective, and this was the principal cause of the accident, and the accident occurred through no fault of the defendants, the plaintiffs cannot recover against the defendants. The court so ruled with the addition of the words, " or of the horse," after the words, " no fault of the defendants."

5. That upon the evidence disclosed in this case, the plaintiffs cannot recover on the count in tort. The court so ruled, but

ruled, that the plaintiffs might recover upon the amended count in tort.

6. If the jury find that the horse started by being suddenly frightened by a dog, or that the accident happened by any defect in the railroad tracks or highway, the plaintiffs cannot recover. The court gave this ruling with the addition of the words, "And through no viciousness of the horse" after the word "highway."

7. If the jury find that the father took the horse designed for another, or without the consent of the plaintiffs, they cannot recover. The court so ruled, but added the words, "Unless the jury find that the defendants knew of the mistake, and could have notified the plaintiffs of the mistake and did not do so."

There was no evidence in the case that the defendants did or did not notify the plaintiffs, or of any effort to notify the father, who lived in the village.

The jury returned a verdict for the plaintiffs, and the defendants alleged exceptions to the rulings and refusals to rule, so far as they conflict with the rulings asked for.

*J. Nickerson*, for the defendants.

*S. J. Thomas*, for the plaintiffs.

DEVENS, J. The objection made by the defendants that the amended count upon which the plaintiffs seek to recover was not filed until after verdict, and therefore that the plaintiffs cannot maintain their verdict, cannot be sustained. It was arranged, without objection by the defendants, when it was found that some amendment of the plaintiffs' declaration was necessary, that such amendment should be made and filed thereafter, and the trial proceeded. Upon the declaration as it was to be amended, and upon the issue to be raised thereby, the presiding judge charged and the jury passed. From the instructions of the court as they appear upon the bill of exceptions, it is evident that when they were given it was fully understood that the amendment had not been in point of fact filed, and no exception was taken by the defendants to thus proceeding without the declaration. It is entirely competent for the court to permit amendments even after verdict, taking care that none are thus allowed by the filing of which the just rights of parties can be injuriously affected; and in the present case it is not shown or suggested that the amendment, as filed by permission of the court, presents any issue except

that which had been passed upon by the jury. Gen. Sts. *c.* 129, § 41. *Emery* v. *Osgood*, 1 Allen, 244.

The exceptions alleged to the instructions must also be overruled. 1. The fact that the accident occurred on the Lord's day did not necessarily prevent the plaintiffs from recovering, and it was not a violation of the Lord's day act for the husband to hire a horse for the purpose of attending the funeral of his brother-in-law, accompanied by his wife, nor for her so to attend.

2. It was the duty of the defendants to furnish a suitable horse for the purpose for which it was hired, and a part of their contract that they would do so. If they have negligently furnished one which was unsuitable, and injury has been occasioned thereby, it is not a defence that they did not know that the horse was unsuitable.

3. It was also correctly ruled that if the contract was made by the father for his son, and the purpose for which the horse was to be used by the son (that of taking his wife and family to the funeral of his brother-in-law) was known to the defendants, then upon proof of other necessary facts, an action of tort might be maintained for the injury to the wife.

4. The addition made by the judge to the fourth request was necessary, in order that the jury should understand that the defendants were to be held responsible for damages arising from the unsuitableness of the horse, in accordance with his ruling which the defendants have objected to by their second exception.

5. The fifth request is disposed of by what has been already said as to the right of the judge to permit the amended count to be filed.

6. If the court considered that the tendency of the sixth instruction as requested was to draw the attention of the jury from the point upon which the case seemed to rest, it was proper, after giving it, to add, " and through no viciousness of the horse," as even if the injury was occasioned by the combined causes of the viciousness of the horse, and sudden fright or the defective way, the defendants would be responsible.

7. The last instruction requested was properly modified by the judge. It appears by the bill of exceptions that the parties lived in the same village. Even if the father took the horse by mistake, yet if the defendants knew of the mistake, and

could with reasonable effort have notified the plaintiffs of it, and failed to do so, it must be inferred that they assented to any responsibility they might be subjected to, if injury was occasioned by the fact that the horse taken was unsuitable for the purpose for which one had been hired.

*Exceptions overruled.*