HOISTING ENGINE SALES COMPANY, Appellant, *v.* JOHN J. HART, Respondent.

**Contract — lease of chattel — implied warranty of fitness — warranty may be proved or implied even though contract is in writing and contains no warranty — implications arising from written lease of " traveler and hoist " to be used by lessee on certain specified work — when not error to receive evidence of conversation wherein president of lessor was told nature of contract and kind of machinery required.**

1. The owner of a chattel which he lets out for hire is under an obligation to ascertain that the chattel so let out by him is reasonably fit and suitable for the purpose for which it is expressly let out, or for which, from its character, he must be aware it is intended to be used; his delivery of it to the hirer amounts to an implied warranty that the chattel is in fact as fit and suitable for that purpose as reasonable care and skill can make it.

2. If there be an implied warranty in the hiring of machinery for a special purpose, that it is and will be fit for such use, or at least will work, then the warranty may be proved or implied even though the hiring was by a written agreement, containing no warranty.

3. The words " Equipment to be used by the lessee on his contract at Signac, N. J.," contained in a written lease of a traveler and hoist, signify that the lessor knew that the lessee had a contract to

do work at Signac, New Jersey; that the equipment it was leasing was to be used on that work and, from the nature of the equipment, it knew that the work was to be the hoisting of dirt and materials. In an action, therefore, to recover the rental reserved in the lease, evidence of a conversation with the plaintiff's president, preceding the execution of the lease, wherein he was told the nature of the defendant's contract and the kind of machinery required, was competent, or at least added nothing to what was already implied by the law from the nature of the lease and transaction. (*Builders Brick & Supply Co.* v. *Walsh Transportation Co.*, 106 Misc. Rep. 460; affd., 189 App. Div. 898, distinguished.)

*Hoisting Engine Co.* v. *Hart*, 205 App. Div. 897, affirmed.

(Argued October 18, 1923; decided November 20, 1923.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered February 28, 1923, unanimously affirming a judgment in favor of defendant entered upon a verdict.

*Kenneth E. Stockton* and *Edward R. Whittingham* for appellant. The court below erred in admitting evidence of oral negotiations prior to the execution of the written contract to prove an " implied warranty " of fitness for a particular purpose. (*Eighmie* v. *Taylor*, 98 N. Y. 288; *Thomas* v. *Scutt*, 127 N. Y. 133; *Cody* v. *Dickinson*, 144 N. Y. Supp. 159; *Sampson* v. *Pels Co.*, 199 App. Div. 854; *Hoe* v. *Sanborn*, 21 N. Y. 552; *Kellogg Bridge Co.* v. *Hamilton*, 110 U. S. 108; *Smith* v. *Coe*, 170 N. Y. 162; *Heath D. G. Co.* v. *Hurd*, 193 N. Y. 255.) There was no implied warranty of fitness for any general purpose in the present case. (*Hargous* v. *Stone*, 5 N. Y. 73; *Barnard* v. *Kellogg*, 10 Wall. 383; *Bartlett* v. *Hoppock*, 34 N. Y. 118; *Dounce* v. *Dow*, 64 N. Y. 411; *Hoe* v. *Sanborn*, 21 N. Y. 552; *Jaffe* v. *Harteau*, 56 N. Y. 398; *Edwards* v. *N. Y. Hudson River Co.*, 98 N. Y. 245; *Timlin* v. *Standard Oil Co.*, 126 N. Y. 514; *Hirsch* v. *Radt*, 228 N. Y. 104; *Builders B. & S. Co.* v. *Walsh Transp. Co.*, 174 N. Y. Supp. 690; 178 N. Y. Supp. 881.)

*William K. Hartpence* and *Franklin Nevins* for respondent. It was not error to permit oral testimony of the conversation between the president of the plaintiff company and the defendant at the time that the contract was entered into for the purpose of establishing an implied warranty that the machinery was reasonably fit for the purpose for which it was leased. (*Putnam* v. *Interior Metal Mfg. Co.*, 225 N. Y. 37; *Moriarity* v. *Porter*, 22 Misc. Rep. 536; *Carleton* v. *Lombard, Ayres & Co.*, 149 N. Y. 137; *Bierman* v. *City Mills Co.*, 151 N. Y. 482; *Sampson* v. *Pels Co.*, 199 App. Div. 854; *Strum* v. *Owen Mfg. Co.*, 201 App. Div. 113; *Cooper* v. *Payne*, 103 App. Div. 118; 186 N. Y. 334; *Van Publishing Co.* v. *Westinghouse, Church, Kerr & Co.*, 72 App. Div. 121; *Wood Mower & Reaper Co.* v. *Thayer*, 50 Hun, 516; *The St. S. Angelo Toso*, 271 Fed. Rep. 245; *Herbrand Co.* v. *Lackawanna Steel Co.*, 280 Fed. Rep. 11; *Flynn* v. *Bedell Co.*, 242 Mass. 450.) It is well settled that where the hirer makes known to the hiror the purpose for which the property is hired and relies upon the skill and judgment of the hiror, there is an implied warranty of fitness for the purpose for which the property is hired. (*Chamberlain* v. *Pratt*, 33 N. Y. 47; *Chase* v. *Second Avenue R. R. Co.*, 97 N. Y. 384; *Fox Const. Co.* v. *Logan Const. Co.*, 170 N. Y. Supp. 50; *Rinaldi* v. *Mohican Co.*, 225 N. Y. 70; *Putnam* v. *Interior Metal Mfg. Co.*, 225 N. Y. 37; *Carleton* v. *Lombard, Ayres & Co.*, 149 N. Y. 137; *Bierman* v. *City Mills Co.*, 151 N. Y. 482; *Van Wyck* v. *Allen*, 69 N. Y. 61; *Sand* v. *Garford Motor Truck Co.*, 204 App. Div. 70; *Strum* v. *Williams Owen Mfg. Co.*, 201 App. Div. 113; *Sampson* v. *Pels Co.*, 199 App. Div. 854; *Cooper* v. *Payne*, 103 App. Div. 118; 186 N. Y. 334; *Bell* v. *Mills*, 78 App. Div. 42.)

CRANE, J. The plaintiff and the defendant entered into an agreement of which the material part is as follows:

" LEASE

" The Hoisting Engine Sales Co., Inc., Lessor, hereby leases to John J. Hart, lessee, the following equipment subject to the following terms:

" One 40' boom, all steel Shannon Traveller with an 8 1/2 x 10 D. C. D. D. Lambert Hoist with swinger and counterweight drum.

" Delivery to be made at Nutley, N. J.

" Return delivery to be made to our yard at Long Island City with trucking charges prepaid to above yard or to an equal distance elsewhere if so directed. Lessee agrees to return equipment in as good condition as when received less wear incident to normal service in the hands of a competent operator.

" Equipment to be used by the lessee on his contract at Singac, N. J."

After the defendant had installed the traveler and hoist it broke down completely and failed to do the work for which it was hired. The defendant had a sub-contract with the Brady Company in the state of New Jersey to excavate a trench and lay about ten miles of water pipe. The pipes were made of steel, thirty feet long and seventy-two inches in diameter and weighed about four and one-half tons each. With the derrick the defendant intended to operate an orange peel bucket to do the digging and also intended to use the same machine to put the pipe in the trench. The hoist could not be operated as it was designed to work and the boom broke when attempting to lift one of the pipes. That the machinery was unfit for the purpose for which it was hired has been determined by the jury and the unanimous affirmance of its verdict by the Appellate Division con-cludes us from examining the question.

The defendant having returned the traveler and hoist, this action was commenced to recover the rental reserved in the lease. The defendant counterclaimed by setting

3

up a breach of warranty and demanding the damages sustained in consequence thereof. From a judgment recovered by the defendant the plaintiff has appealed presenting what it claims to have been errors in the admission of evidence to vary the terms of the writing as given above.

The position the plaintiff takes is this. The writing contains no express warranty that the traveler and hoist will do the defendant's work; there is no implied warranty so there was no warranty at all. Therefore, if this be true, it was error to permit the defendant to give in evidence the conversation with the plaintiff's president, preceding the execution of the lease, wherein he was told the nature of the defendant's contract and the kind of machinery required. This, says the plaintiff, added an express oral warranty to the written lease, as no implied warranty arose out of the transaction.

When John J. Hart, the defendant, was on the stand he was asked: " Q. What was the general nature of that contract? A. It was laying a pipe line. Q. Well about how long a pipe line, and what kind of pipe? A. It was a steel pipe, 72 inches in height, 30 feet long, and about 10 miles of work. Q. Do you know Mr. Cist, the president of the plaintiff company? A. I do. Q. Did you have a conversation with Mr. Cist in regard to your contract over in New Jersey? A. I did in Mr. Cist's office. Q. Now state what you said to Mr. Cist and what Mr. Cist said to you? A. I told Mr. Cist what I wanted. I said ' have you got a traveling derrick, I want to use an orange peel on it to do the digging;' I also wanted to use the same machine to put in pipe; he said, ' I have got a rig that you can use, in fact it is over in Jersey now.' I said ' what kind of a machine is it,' and he said ' it is a Lambert engine, 8 1/2 by 16, with a swinger on it, and it is a Shannon traveler.' I says ' what kind do you call a Shannon traveler ' and he said ' it is a machine good for ten tons.' "

1923.]                    Opinion, per CRANE, J.            [237 N. Y. 30]

This testimony was received over objection and exception.

In the first place we must note that the written lease refers to a purpose for which this traveler and hoist were to be used. " Equipment to be used by the lessee on his contract at Singac, N. J." These are the written words. What do they signify without any oral testimony to explain them? *First,* they signify that the plaintiff knew that the defendant had a contract to do work at Singac, New Jersey. *Second,* they make clear that the plaintiff also knew that the equipment it was leasing to the defendant was to be used on that work. *Third,* that from the nature of the quipment the plaintiff knew that the work was to be the hoisting of dirt and materials. Where the writing is sufficiently specific to state all these things, I do not consider it a departure from the instrument to show a little more in detail what the defendant's contract was and that the plaintiff knew all about it. The plaintiff in writing says: " I know that you want my hoisting machine for use on your contract in Signac, New Jersey." Does this not reasonably imply that it also knew the nature of that contract and generally the kind of work it called for? It does not vary the terms of the written instrument to show by parol that the plaintiff knew what it was writing about when it referred to the defendant's contract.

This case was not tried on the theory of an express warranty, so let us proceed to consider the implied warranty if any. If there be an implied warranty in the hiring of machinery for a special purpose, that it is and will be fit for such use, or at least will work, then the warranty may be proved or implied even though the hiring was by written agreement, containing no warranty. " All implied warranties, therefore, from their nature, may attach to a written as well as an unwritten contract of sale." (*Carleton* v. *Lombard, Ayres & Co.*, 149 N. Y. 137, 146.) Thus there is an

implied warranty in manufactured goods sold by the maker that they are free from any latent defect growing out of process of manufacture (*Hoe* v. *Sanborn*, 21 N. Y. 552; *Carleton* v. *Lombard, Ayres & Co., supra*); also in the sale of seeds by the grower there is an implied warranty that they are free from any latent defect arising from improper cultivation. (*White* v. *Miller*, 71 N. Y. 118.) In the sale by a retail dealer of articles of food for immediate use there is an implied warranty that they are fit for human consumption. (*Race* v. *Krum*, 222 N. Y. 410; *Rinaldi* v. *Mohican Co.*, 225 N. Y. 70.) That the sale of any of these things was in writing, expressing no warranty, would not prevent the warranty by implication from attaching. By analogy there is an implied warranty in the hiring or bailment of certain kinds of property. In the hiring of a horse there is an implied warranty that he is fit for the purpose for which he was taken (*Fowler* v. *Lock*, L. R. 7 Common Pleas, 272); in hiring a carriage that it will not fall apart (*Hyman* v. *Nye & Sons*, L. R. 6 Q. B. D. 1880, p. 685.) Where wharfingers agreed to permit a shipowner to discharge his vessel at their jetty in the Thames where vessels must of necessity ground in low water, there was an implied warranty that the bed of the river was not so uneven as to cause damage to the ship. (*The Moorcock*, L. R. [14 P. D.] 64.) Shipowners agreeing to furnish the necessary cranes, chains and gearing to a stevedore to discharge a cargo impliedly warrant that the chains are so far sound as to be sufficient for the work intended. (*Mowbray* v. *Merryweather*, [1895] 2 Q. B. 640.) Sacks to be used in unloading a cargo of peas are warranted by implication to be fit for the purpose. (*Vogan & Co.* v. *Oulton*, 81 L. T. Rep. 435.) When a stablekeeper let a horse, knowing that it was to be used to take a family to a funeral, he was held liable for an injury caused by the unsuitableness of the horse for the purpose for which it was hired. (*Horne* v. *Meakin*, 115 Mass. 326.

See, also, *Hadley* v. *Cross*, 34 Vt. 586; Williston on Contracts, p. 1956.)

In Halsbury's Laws of England (Vol. I, sec. 1117) we find this: " The owner of a chattel which he lets out for hire is under an obligation to ascertain that the chattel so let out by him is reasonably fit and suitable for the purpose for which it is expressly let out, or for which, *from its character*, he must be aware it is intended to be used: his delivery of it to the hirer amounts to an implied warranty that the chattel is in fact as fit and suitable for that purpose as reasonable care and skill can make it."

This is the rule to be applied to the facts of this case. The plaintiff owned a traveler with a hoist for digging and lifting work. It hired it to the defendant to so such work on his contract in Singac, New Jersey. There was an implied warranty that the thing would work as it was supposed to do. Instead of this it broke down, came apart and collapsed with the first heavy load. The defendant does not claim that there was a warranty that this machine would do a special class of work for which it might or might not be adapted; he claims on the usual and customary warranty implied in all such hiring, that the machine will work, will go, will do the thing for which it was built, the class of work which its nature indicates it was intended to perform.

We think, therefore, that the conversation above detailed by the defendant Hart was competent, or at least added nothing to what was already implied by the law from the nature of the lease and transaction.

It may be that the hiring of a chattel should be assimilated to the sale of goods and that section 96 of the Personal Property Law (Cons. Laws, ch. 41) applies. Such is Mr. Williston's suggestion in his work on Contracts (sec. 1041, p. 1956). We do not deem it necessary to consider the point.

The case of *Builders' Brick & Supply Co.* v. *Walsh*

*Transportation Co.* (106 Misc. Rep. 460; affd., 189 App. Div. 898) is pressed upon our attention as an authority against an implied warranty in the hiring of chattels. Even if we approved of the law as applied in that case — about which we express no opinion — we note the statement in the opinion that " the written agreement that memoralized the engagement of the parties contained no reference to the use to which the dredge was to be put," etc. In the case we are deciding the written agreement mentioned the use.

The judgment appealed from must, therefore, be affirmed, with costs.

Hiscock, Ch. J., Hogan, Cardozo, Pound, McLaughlin and Andrews, JJ., concur.

Judgment affirmed.