## Dufort v. Smith

*William A. Valentine* and *William S. Crapser*, for plaintiff.

*R. Lawrence Coughlin* and *H. Monroe Houtz*, for defendant.

APONICK, J., March 29, 1944.—On October 9, 1942, plaintiff leased to defendant a four-passenger Stinson

Monoplane, registration number NC-14568, for a period not to exceed seven days. The lease was in writing and provided for a rental of $500, with the understanding that if the plane was used for more than 25 hours of flying time defendant should pay the plaintiff therefor at the rate of $20 per hour. It was also provided in the lease that defendant was to make all necessary repairs to the plane and that he was to return the plane at the end of seven days in as good condition as it was at the time of delivery to defendant, reasonable wear and tear excepted.

The plane was delivered to defendant at the airport of the plaintiff at Massena, N. Y., on October 9, 1942, the same day the lease was executed, and at the same time defendant, through his agent, paid to plaintiff the sum of $250 on account of the rental. The balance was to be paid when the plane was returned.

On the day of delivery, the plane was flown from Massena, N. Y., to the place of business of defendant at the Wyoming Valley Airport, Forty Fort, Pa. On the flight from Massena and during test flights conducted on the next two days, the plane was found to be defective in that the engine was throwing oil on the windshield to such an extent as to make flying hazardous because of the decreased visibility.

On October 11, 1942, defendant called plaintiff on the telephone to report the condition of the plane. The substance of that conversation is seriously disputed by the parties, but is not now important.

On October 12, 1942, two of the employes of defendant were instructed to return the plane to plaintiff at Massena, N. Y. They started out and had gotten as far as Tunkhannock when the engine, suddenly and without any warning, went "puff", the cabin was filled with smoke, flame shot out from under the cowling and the engine stopped. At the same time, such a large quantity of oil was projected from the engine onto the windshield as to completely obscure the vision of the occupants of

the plane. By reason of good piloting and some luck, the plane was landed in an open field without any damage whatsoever to the fuselage of the plane.

Shortly after the landing, defendant's mechanics arrived on the scene and it was found that the piston in No. 5 cylinder had broken, resulting in the engine failure which caused the forced landing. This piston was offered in evidence. The principal conflict in the testimony revolves around the question of what caused this piston to break.

Plaintiff brought suit to recover the balance of $250 on the rental of the plane and also damages for failure to return the plane in the same condition as it was on the day of delivery, reasonable wear and tear excepted. Defendant counterclaimed for the sum of $73.26, being made up as follows: $250 rent paid to plaintiff at the time of signing the lease, plus $43.26 for gasoline and oil, less $220 for the time defendant used the plane (11 hours at $20 per hour). This counterclaim was based upon the claim of defendant that the leasing of the plane was subject to an implied warranty of fitness and that this warranty had been breached.

The trial court charged the jury that if they found that the breaking of the piston was due to reasonable wear and tear plaintiff could recover only the sum of $250, balance of the rent, but that if it was not caused by reasonable wear and tear then they were to add to that sum the damages suffered by plaintiff, the measure of which was defined for the jury.

On the question of implied warranty the trial judge charged as follows:

"Defendant has another defense to this cause of action. Unless it is expressly provided otherwise in the contract, and it was not in this case, where an article is leased by a person to another and the lessor, the plaintiff in this case, knows the purpose for which the property is to be used, there is an implied warranty which attaches to the contract, as a matter of law, that the

property is reasonably fit for the purpose for which it is leased. Defendant in this case contends that the plane he leased from the plaintiff was not reasonably safe for the purpose for which he leased it, to wit, to fly. He contends that it was in such condition that it was not fit to fly, or in other words, that it was not airworthy."

The court then told the jury that the burden of proving that there was a breach of this implied warranty was on defendant and defined what was meant by the burden of proof. The court also instructed the jury that in no event could both plaintiff and defendant recover, nor could the damages of one be offset against the other. The instructions were explicit that the verdict must be either for plaintiff for $250, or for $250 plus his damages, or the verdict must be for defendant for his damages, which, in no event, could exceed the sum of $73.26. The jury returned a verdict for defendant for the sum of $73.26. Plaintiff has now moved for a new trial and that motion is now before us.

Plaintiff complains in his brief of the exclusion of evidence on the question of damages, the inadequacy of the charge of the court on the question of reasonable wear and tear, and the statement in the charge of the court that an implied warranty of fitness was attached to the contract. In view of the charge of the court, the verdict of the jury could be predicated on only one ground, namely, that there was a breach of the implied warranty of fitness. Upon no other hypothesis could the jury find for defendant. Therefore, the only question now before the court is that relating to the implied warranty.

Plaintiff did not assign the quoted portion of the charge, relating to implied warranty, as one of the reasons for a new trial. A general exception was taken to the charge of the court, but no specific exception to that portion of the charge. In view of the fact that the question was thoroughly discussed by both counsel in

their briefs and on oral argument, under the general reason that the verdict was against the law, we shall disregard any technical reason for dismissing the rule and decide the question on its merits.

Where there is a bailment for the mutual benefit of the parties, as for hire, there is imposed on the bailor, in the absence of a special contract or representation, an obligation that the thing or property bailed for use shall be reasonably fit for the purpose, or capable of the use, known to be intended: Conn v. Hunsberger, 224 Pa. 154; The White Company y. Francis, 95 Pa. Superior Ct. 315; Mallory S. S. Co. v. Druhan, 17 Ala. App. 365, 84 So. 874; Hoisting Engine Sales Co., Inc., v. Hart, 237 N. Y. 30, 142 N. E. 342; Hacker v. Nitschke, 310 Mass. 754, 39 N. E. (2d) 644. See also Bonenberger v. Pittsburgh Mercantile Co., 345 Pa. 559, and MacPherson v. Buick Motor Co., 217 N. Y. 382, 111 N. E. 1050. Such warranty attaches to both written and oral contracts: The White Company v. Francis, supra; Hoisting Engine Sales Co., Inc., v. Hart, supra. It is immaterial that the lessor of the property did not know of the defect in the property leased, if such knowledge could have been ascertained by reasonable diligence: Conn. v. Hunsberger, supra.

In the instant case, the contract provided as follows:

"It is mutually covenanted and agreed between the parties that the leased airplane is to be used exclusively for civilian pilot training. . . ."

Such a provision is notice to the lessor that the plane is required for a special purpose and that it must perform certain types of work, the most important of which, in this case, is that it will fly safely. Such provision places even a greater burden on the lessor to make certain that the property is suitable for that general purpose: Hoisting Engine Sales Co., Inc., v. Hart, supra.

Defendant relies on the recent case of Demos Construction Co., Inc., v. Service Supply Corp., 153 Pa.

Superior Ct. 623, in which it was held that no implied warranty attaches to a sale or lease of a specified article under its patent or other trade name, citing section 15, para. 4, of The Sales Act of May 19, 1915, P. L. 543, 69 PS §124. What was said in that case is merely by way of dicta because the testimony showed that defendant sought out the machine and examined it before leasing it and found it in good operating condition, thus bringing the contract under section 15, para. 3, of The Sales Act, supra.

This plane was described in the lease as "one four (4) passenger Stinson Monoplane, registration number NC-14568." While the designation as a "Stinson" was a trade name, it is apparent that it was only for the purpose of identification and for no other reason. Under such circumstances, the sale is not that of a specified article under its patent or other trade name within the meaning of section 15, par. 4, of The Sales Act: Hobart Manufacturing Co. v. Rodziewicz, 125 Pa. Superior Ct. 240, 246; Peerless Electric Co. v. Call, 82 Pa. Superior Ct. 550.

The evidence in the instant case is ample to support the verdict of the jury that there was a breach of this implied warranty. Prior to the delivery of the plane, defendant's agent made an inspection of the plane itself and the controls. The inspection he made of the engine was limited to what could be ascertained by observing it from the outside and by operating the motor. The plane was also taken up for a short flight by defendant's agent and plaintiff. This flight was for the purpose of permitting defendant's pilot to familiarize himself with the idiosyncracies of that particular plane. At the conclusion of the flight, the pilot called plaintiff's attention to the fact that there was oil sprayed over the windshield. Plaintiff stated that the motor had been washed down only recently and that was what caused the spray. On the way down from Massena, the engine again sprayed oil on the windshield, as it did on the two fol-

lowing days. Various efforts were made by defendant to correct the condition, but with no success and defendant decided to return the plane to plaintiff.

After the forced landing at Tunkhannock, the piston was taken out, retained by defendant, and produced in court. The theory of defendant was that this break was caused by metal fatigue and it was admitted by plaintiff on the stand that this might have been a cause, although he had another theory of the cause of the break. Defendant called two experts, the one the pilot who brought the plane from Massena and was in the plane at the time of the forced landing, and who was an instructor on engines and a pilot for more than ten years; the other one, the person who sold the plane to plaintiff and who had very extensive experience with this type of radial motor. From the testimony of these two witnesses, the jury could have found that the breaking of the piston was caused by metal fatigue; that a crack might have been present in the piston for a month; that such crack could be discerned only by a careful "top overhaul", which would include the removal of the piston from the cylinder; that the crack in the piston would cause a leak of the pressure from the compression chamber into the crank case, causing increased pressure there which, in turn, would force the oil out through the breather; that the cause of the oil on the windshield was the forcing of the oil out of the breather; that the condition existed at the time of the delivery of the plane to plaintiff and that it was the same cause that resulted in the forced landing at Tunkhannock.

The implied warranty in this case was that the plane was suitable to fly or, in other words, airworthy. Airworthiness was defined by plaintiff as follows:

"Q. You have testified here as to airworthiness. Will you explain just what you mean by that?

A. Simply the manner in which the airplane behaves in flight without danger or damage or injury. In tech-

nical language, it means that certain requirements must be met, and certain inspections must be recorded, and in such a manner that there is no question about the airplane being satisfactory or fit to fly. I don't know if that clears it up. It pertains to the fact that the airplane must be fit to fly and safe for occupants in the air, and that is required by the government."

Under that definition this plane was not airworthy because there existed in the motor a condition that subsequently caused an extremely hazardous emergency landing that might well have resulted seriously for the occupants of the plane.

Defendant's witnesses were unanimous in the opinion that the condition which caused the oil spray on the windshield when the plane was flown at Messena was the same condition which caused the eventual breaking of the piston and the forced landing at Tunkhannock. It was also testified by plaintiff's witness, Bonner, that if a piston had a crack in it the plane would not be airworthy.

Plaintiff claimed that the piston broke because of the improper way in which the plane was handled. There was no direct evidence to support this contention. Plaintiff introduced evidence by experts to sustain his contention. Their testimony was directly contrary to that of defendant's experts and also of the pilot of the plane, who testified that he abided by all of the instructions given him by plaintiff regarding the handling of the plane. This conflict of testimony created a question solely and peculiarly within the province of the jury and we cannot say that their verdict finding that there was a breach of the implied warranty of fitness or airworthiness was unjustified.

## Order

Rule for a new trial discharged and prothonotary directed to enter judgment on the verdict in favor of defendant and against plaintiff upon payment of the appropriate fees.