SHAMROCK TOWING CO., Inc., v. FICHTER STEEL CORPORATION et al.

FICHTER STEEL CORPORATION v. ANTHONY O'BOYLE, Inc.

No. 235.

Circuit Court of Appeals, Second Circuit.

April 22, 1946.

Leo F. Hanan and Macklin, Brown, Lenahan & Speer, all of New York City (Richard S. Leahy, of New York City, of counsel), for appellant Anthony O'Boyle, Inc.

Edward Ash and Alexander & Ash, all of New York City (Francis J. Donovan, of Brooklyn, N. Y., of counsel), for appellee Shamrock Towing Co., Inc.

Jacob Rassner and Robert Moers, both of New York City (Robert Moers, Benjamin S. Kirsh, and Leonard Bronner, Jr., all of New York City, of counsel), for appellee Fichter Steel Corporation.

Before L. HAND, CLARK, and FRANK, Circuit Judges.

L. HAND, Circuit Judge.

This is an appeal from a decree in the admiralty entered upon the petition of Anthony O'Boyle, Inc. for limitation of its lia-

bility for injuries to a scow of the Shamrock Towing Company, Inc., and to a "Lidgerwood" engine of the Fichter Steel Corporation, by the breaking of the boom upon the O'Boyle Company's "Crane No. 1," on March 19, 1943. The Shamrock Company sued the O'Boyle Company and the Fichter Steel Company for the damage to its scow which it had chartered to the Steel Company. Thereupon the O'Boyle Company filed a petition for limitation of liability; and both the Shamrock Company and the Steel Company filed claims in that proceeding. The case was tried and an interlocutory decree was entered, denying the petition for limitation and holding the O'Boyle Company liable to both claimants. The facts were as follows.

In June, 1942, the Shamrock Company chartered its scow, "Colonel G," to the Steel Company to carry a "Lidgerwood" engine with its appurtenances from the Bronx to the Brooklyn Navy Yard. The Steel Company engaged a crane from the O'Boyle Company to lift the engine from the deck of the scow to the wharf, and this the crane did without mishap. Nine months later, on March 19, 1943, the Steel Company's work at the Navy Yard having ended, it wished to move the engine back to the Bronx, and it again chartered the "Colonel G" from the Shamrock Company, and a crane from the O'Boyle Company. That company furnished the same crane, but this time, after it had lifted the engine from the wharf and swung it out over the deck of the scow, the boom buckled and the engine fell upon the deck, injuring both the scow and itself. The judge found that "the main body of the hoist" weighed "about thirteen tons"; that the crane had satisfactorily carried loads up to fifteen tons in the past; and that the O'Boyle Company knew that it was to be used to carry a load of approximately thirteen tons: i.e. the same engine that it had lifted in the previous June. He also found that the O'Boyle Company warranted to the Steel Company that the crane was capable of carrying the same load that it had in the previous June, and that no floating or passing craft had caused the boom to buckle, by unduly disturbing the surface of the water; but that it buckled because it was not strong enough

to withstand such conditions as were to be expected. The crane had suffered an injury on February 20, 1943 and the O'Boyle Company had had it repaired at the hands of a boilermaker, who burned off a number of rivets with an oxy-acetylene torch, and replaced an injured part. The judge found that the repairs were improperly done, and charged the petitioner with personal notice of that fact, through the knowledge of one, Wilson, its foreman who superintended the repairs.

The evidence supporting the finding that the O'Boyle Company had warranted the crane as fit for the work was as follows. The O'Boyle Company's testimony was that one, Loretta R. O'Boyle, was authorized to charter and despatch its marine equipment, and that, a day or two before the accident, she chartered the crane to the Steel Company "for $120 a day, plus the towing to and from the job, and we were to arrange the towing, but we were to bill them for it." The parties did not specify which of the four O'Boyle cranes was to be used, but the Steel Company asked for a crane like that which did the job before; and the capacity of that crane was fifteen or sixteen tons. The Steel Company's testimony was that in June, 1942, its chief engineer told Miss O'Boyle that he wanted to get a "derrick and crew" to load the equipment at the Navy Yard, and that the heaviest piece to be handled was thirteen tons. Miss O'Boyle told him that she had a boat capable of lifting fifteen to eighteen tons which would be available for use when he wanted it, within a few days. When he chartered the crane the second time, he told Miss O'Boyle that he wanted a "derrick" to take down the same equipment that had been put up nine months before. Thus the two versions are in substantial accord.

The issues to which the greater part of the evidence related were whether the repairs to the crane in February, 1943, had been sufficient, and whether, if not, the knowledge of Wilson, the foreman, charged the O'Boyle Company so as to make it liable without limitation. Neither of these was relevant to the Steel Company's case for the O'Boyle Company impliedly warranted that the crane was "seaworthy": i.e. reasonably fit for the service to which it

was to be put and in whose discharge it failed. There was no unusual disturbance of the water; the weight of the engine was not nearly as great as that which Miss O'Boyle had said that the crane could bear, and its owner offered no excuse for the buckling of the boom. If the usual implied warranty existed, the O'Boyle Company was liable without limitation, for there is no difference in this regard between an implied, and an express, warranty. Cullen Fuel Co. v. W. E. Hedger, Inc., 290 U.S. 82, 54 S.Ct. 10, 78 L.Ed. 189. We can think of no reason which should take such a vessel out of the usual doctrine that upon a charter the owner warrants the craft as seaworthy. In The Jungshoved, 2 Cir., 290 F. 733, 735, we said: "the kind of carriage * * * was very humble; it consisted in lying still and acting as a warehouse; still it was carriage, in the sense of sustaining on the water, and that is enough." The question is to be distinguished from whether a barge used on the Lakes for a warehouse during the winter, is the subject of admiralty jurisdiction (Pillsbury Flour Mills Co. v. Interlake S. S. Co., 2 Cir., 40 F.2d 439; although it would make no difference if the maritime law did not apply, because, treated merely as a bailment, the lease of the scow implied a similar warranty. Hoisting Engine Sales Co. v. Hart, 237 N.Y. 30, 142 N.E. 342, 31 A.L.R. 536. (Mowbray v. Merryweather, [1895] 2 Q.B. 640, was a case close aboard.) Be that as it may, the charter was clearly one of carriage, more definitely so than that in The Jungshoved, supra, 290 F. 733; for the crane was to lift the engine from the dock and carry it to the deck of the scow. While the engine was swinging on the boom, the crane was not only "sustaining" it "on the water," but was in the very act of moving it over the water until it was deposited on the deck of the scow. Although it is true that this took only a few minutes, it was water carriage in the strictest sense.

▪ There remains the case of the Shamrock Company against the O'Boyle Company. As charterer of the scow, the Steel Company was liable for her safe return and could not excuse itself because it had trusted the O'Boyle Company to place the engine safely on the deck. O'Donnell Transportation Co. v. M. & J. Tracy, Inc., 2 Cir., 150 F.2d 735. However, the Steel Company's liability for the scow was itself confined to negligence, and unless the O'Boyle Company was negligent, the Shamrock Company could hold neither it nor the Steel Company. For this reason the question does arise, as to the Shamrock Company, whether the O'Boyle Company had performed the repairs to the crane negligently. The judge made a number of findings of fact on that issue upon sharply contested evidence. He found that when the boom had broken in February the repair man should have cut away the rivets, and that to burn them out, as he did, weakened the adjacent metal; and he further found that this was the cause of the collapse on March 19. We can see no sufficient reason to disturb these findings; the evidence permitted an opposite conclusion, it is true, but the judge saw all the witnesses, and discussed the issue with great care in his opinion. We should not be warranted in declaring that his findings were "clearly erroneous." Seaboard Sand & Gravel Corporation v. American Stevedores, 2 Cir., 151 F. 2d 846, 847. Moreover, the Steel Company, not being the owner of a vessel, cannot limit its liability for the damage done by the O'Boyle Company to the scow although that company can limit its own liability to the Steel Company and to the Shamrock Company. We do not agree with the judge that Wilson's knowledge of the repairs charged the O'Boyle Company; and therefore the case stands that the Shamrock Company can hold the Steel Company without limitation for all the damage to the scow, because of the negligence of the O'Boyle Company; but that that company can limit its direct liability for that damage. At first blush this would appear to throw upon the Steel Company the difference between the damage to the scow and the value in limitation of the crane; but that is not true. The Steel Company—being liable to the Shamrock Company without limitation for the damage to the scow—after paying the Shamrock Company, could indemnify itself from the O'Boyle Company under the warranty that the crane was seaworthy; for the damages which it would then have paid, as charterer, would

be a direct loss following upon the O'Boyle Company's breach of warranty. In the admiralty any such circuity of action would be avoided by a single decree holding the O'Boyle Company primarily liable for the injuries to both the engine and the scow, and the Steel Company secondarily liable for the damages to the scow. However, since the Shamrock Company filed no assignments of error, we will not add to the decree the secondary liability of the Steel Company.

The O'Boyle Company complains that the Steel Company went to trial without filing or serving any answer to its petition for limitation. When the Steel Company filed its claim in the proceeding on February 21, 1944, it neglected to answer the petition; but on May 19, 1944, upon motion duly made the court granted it leave to serve an answer; and although it neglected actually to serve the answer upon the O'Boyle Company, the motion papers contained a copy of the proposed answer which was in the possession of the O'Boyle Company for nearly a year before the trial. That certainly advised that company of what would be the Steel Company's position; and we cannot withhold some expression of surprise that the defect should be at this day put forward with apparent seriousness as a ground for reversal.

Decree affirmed.