**Petition of David MAHONEY, Owner of BARGE ARLENE, in a Cause of Exoneration from or Limitation of Liability, Civil and Maritime.**

**No. 2310.**

United States District Court
D. New Hampshire.

June 20, 1966.

Murphy & Giles, Gerald F. Giles, Portsmouth, N. H., Glynn & Dempsey, Richard A. Dempsey, Boston, Mass., for plaintiff.

Griffin, Harrington & Brigham, Lindsey R. Brigham, Portsmouth, N. H., for N. E. Tank Industries of N. H., Inc.

Robert J. Owens, Boston, Mass., and James J. Myers, Gadsby, Maguire, Hannah & Merrigan, Boston, Mass., for J. F. White Contracting Co.

## OPINION

CAFFREY, District Judge.*

This is a petition filed by David Mahoney, owner of the barge ARLENE, for exoneration from or limitation of liability in connection with the sinking of the ARLENE on October 2, 1961 while tied up at a pier in the Piscataqua River at Newington, New Hampshire. Appearances were filed for respondent-claimants, New England Tank Industries of New Hampshire, Inc. and J. F. White Contracting Company.

After trial, I find and rule as follows:

Petitioner at all relevant times was a resident of Rockingham County, New Hampshire. He purchased the barge ARLENE in 1959 for $1.00 from one Clarence R. Norris, who, in turn, had acquired it in 1954 from Charles L. Hazeman & Son of East Boston, Massachusetts. Norris had used the ARLENE as a lighter in the operation of his diving business, C. Ray Norris & Son. Norris testified that he stripped the ARLENE in 1959 and sold the hull to Mahoney minus all equipment save a few steel bits. This was the first barge that Mahoney had ever owned.

The ARLENE was a wooden hulled barge about 120' long by 35' wide. It drew about 2' to 3', had a freeboard of about 4' and was of pre-World War I vintage. After purchasing the barge Mahoney paid $450.00 to have her towed to Portsmouth, New Hampshire harbor, where he used her for 18 months, primarily as a work platform in connection with the construction of a pier. While so engaged a compressor and other equipment weighing 10–11 tons were placed aboard and used on the ARLENE without incident. She lay idle from the spring of 1960 until she was chartered by the J. F. White Contracting Company in September 1961.

In September 1961, petitioner Mahoney talked on the telephone with Richard McDermott. Mahoney knew from prior business dealings with the J. F. White Contracting Company that McDermott was an executive of the company. During this telephone conversation McDermott indicated to Mahoney White's interest in obtaining the use of his barge in order to do some construction work at the dock of the New England Tank Farms. Mahoney advised McDermott that the barge was available and that White could rent it. About ten days later, McDermott came to Mahoney's office and they went and inspected the barge together. McDermott indicated that the contemplated period of use of the barge by White would be not much more than one week. Mahoney told McDermott that the rental would be $30.00 a day and that he, Mahoney, would accept no responsibility for the use of the barge or for any personnel involved in the working of the barge. McDermott told Mahoney that a Mr. O'Connor of the White Company "would be up on the barge." I rule that an oral charter of the ARLENE was entered into at this time.

On September 27, 1961, Mr. Robert O'Connor appeared at Mahoney's office, identified himself to Mahoney as an engineer for White and said that he was going to handle the job at New England Tank Farms for White. Mahoney then produced an insurance and indemnity agreement and told O'Connor that this document must be executed before he would allow White to use the barge. In Mahoney's presence O'Connor made a telephone call which he told Mahoney was to the White home office. The fact that this call was to the White office is corroborated by Answer 5(b) of White's answers to interrogatories which states in part, "Mahoney asked O'Connor to

---

* By designation.

sign an insurance waiver. O'Connor relayed this request of Mahoney to White." O'Connor advised Mahoney that he had gotten the "O.K." from the home office and proceeded to execute the insurance and indemnity agreement which is in evidence as petitioner's Exhibit No. 1. I find it unnecessary to rule on whether or not O'Connor had actual or apparent authority to execute this document in view of the ruling contained herein with regard to the alleged unseaworthiness of the ARLENE and the alleged negligence of Mahoney.

O'Connor took possession of the ARLENE and had her placed alongside the dock of New England Tank Farms about one mile upstream from the location where Mahoney had used it, where it was used as a work platform by employees of the White Company without incident on September 27, 28 and 29, 1961. White put a boom crane and a quantity of building materials weighing over seven tons aboard the ARLENE. White found it necessary to pump her once on Wednesday, the 27th, twice on Thursday, the 28th, and again on Friday the 29th, with the 1½" pump which was aboard when White took possession of the barge. All of White's employees left the barge near midnight on Friday, September 29th, and left it unattended over the weekend.

About 8:00 a. m., Monday, October 2nd, employees of New England Tank Farms discovered that the freeboard of the ARLENE had dropped from its normal 4' to about 1', and also that the 1½" pump that was aboard was not working. They went aboard, bringing with them a 1" pump which they immediately put into operation. However, after this 1" pump had been in use for about 45 minutes, the New England Tank employees observed that the ARLENE was listing badly toward one end and her sinking appeared imminent. They leaped to the dock and she went down.

■ I rule that petitioner Mahoney is entitled to exoneration from liability because I am satisfied that despite her age and despite her condition when ex- amined two months after the sinking by the expert, Mr. Raymond Kershaw, the ARLENE was seaworthy in the only sense which is material to this case, namely, that she was reasonably fit for her intended use as a work platform tied up to a pier in the Piscataqua River for a period expected to be not much more than one week. In so ruling I have in mind that while manned and pumped a few times a day the ARLENE was used without incident for three of the contemplated seven or ten days of the charter, and I likewise have in mind that she came to grief only when abandoned and left unpumped for a period of approximately 55 hours. Although the testimony of Mr. Kershaw establishes without question that she was old and in poor condition, that same testimony indicates that the deterioration of her condition had been taking place gradually over a very long period of time. I am satisfied that when chartered by Mahoney to White she was in substantially the same condition as she was when Mahoney successfully used her as a work platform in the same river approximately two years before the sinking. Mahoney had used her without difficulty as a busy work platform over an 18 month period during which she carried a much heavier load of equipment than that which White put aboard her. She had not been subjected to any unusual stresses or strains during the year she lay idle after Mahoney finished his work and she had never foundered when in the possession of Norris or Mahoney, both of whom testified that they did whatever pumping was necessary. It is not without significance that White failed to call as witnesses any of its employees who worked on the ARLENE on Wednesday, Thursday and Friday, September 27, 28 and 29, 1961. I draw the inference from White's failure to call these witnesses that their testimony as to the condition of the ARLENE would have been adverse to White's interest. The fact that a barge leaks and has to be pumped does not require a finding that it is unseaworthy. O'Brien Bros., Inc. v. United

States, 171 F.2d 586 (2d Cir. 1948). It should be noted that service as a work platform tied up to a pier in a river is a far less onerous burden on the hull of a barge than serving as a seagoing barge.

Thus, although it might well be that in the twilight of her career the ARLENE could be considered unseaworthy for heavy duty in the open sea for the type of duty customarily performed by barges, nevertheless, I find that she was reasonably fit for use as a work platform in the construction of a pier in the Piscataqua River for a period of a week or two, had White used reasonable care to see to it that she was pumped over the weekend with the same degree of regularity that had been used without incident on the previous Wednesday, Thursday and Friday. In short, I am satisfied that the ARLENE was seaworthy in terms of being fit for this particular intended purpose.

In view of the finding that the ARLENE was seaworthy I rule that Mahoney is entitled to exoneration from liability as against J. F. White Contracting Company.

As between Mahoney and New England Tank Industries, New England Tank is not in a position to claim or receive the benefit of any warranty of seaworthiness, but must instead rest its claim on negligence. Shamrock Towing Co. v. Fichter Steel Corp., 155 F.2d 69 (2d Cir. 1946); The Cullen No. 32, 62 F.2d 68 (2d Cir. 1932). The facts adduced at trial by New England Tank in support of its claim are the same as those discussed above in this opinion, with one exception. The information that the AR-LENE was pumped by White on Wednesday, Thursday and Friday is contained only in White's answers to interrogatories which, on motion of counsel for New England Tank, were not admitted against New England Tank. Prescinding from those answers to interrogatories and upon consideration of all the evidence admitted generally in the case, I am not persuaded that Mahoney can properly be found to have been negligent

toward New England Tank Industries in chartering the ARLENE to White for use at New England Tank's pier, and that accordingly he is entitled to exoneration from liability to New England Tank Industries.

The petition for exoneration is allowed.