87 F.2d 708 (1937)
THE H. A. SCANDRETT.
SELLON
v.
GREAT LAKES TRANSIT CORPORATION.
No. 154.
Circuit Court of Appeals, Second Circuit.
February 1, 1937.
Sanders, Hamilton, Dudley & Connelly, of Buffalo, N. Y. (W. M. Connelly, of Buffalo, N. Y., of counsel), for appellant.
Henry Fogler, of Buffalo, N. Y., for appellee.
Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.
AUGUSTUS N. HAND, Circuit Judge.
This is a suit in admiralty brought against Great Lakes Transit Corporation, the owner of the steamer H. A. Scandrett, to recover damages for injuries suffered on November 13, 1933, by Sellon, a mate and member of the crew, because of the alleged neglect of the corporation to furnish him with a properly fitted and seaworthy door and appliances thereon. The libel contained two causes of action, the first to recover damages under the maritime law for injuries *709 resulting from the unseaworthiness of the door and its appliances, and the second to recover the amount due the libelant for maintenance and cure. It alleged that, when Sellon was proceeding from the wheel-house to his quarters and had arrived at the door leading to such quarters, he tried to open it but the knob gave way and as a result he was precipitated toward a hatch, his right hip struck upon a hatch clamp, and his injuries resulted.
The suit, though brought in admiralty, was tried before Judge Rippey and a jury under the so-called Great Lakes Statute, 28 U.S.C.A. § 770. The jury found that the libelant was entitled to recover $21,166.67 upon the first cause of action, less 30 per cent. found to be deductible because of his contributory negligence, leaving a balance of $14,816.67, and that he was entitled to recover $683 upon the second cause of action for maintenance and cure. From the part of the judgment upon the verdict representing a recovery upon the first cause of action the respondent appeals. We think that the judgment should be affirmed.
The Scandrett was a steamer engaged in carrying freight on the Great Lakes and when Sellon was injured was on a voyage from Duluth to Buffalo. He had been on watch between midnight and about 6:15 a. m. on November 13, 1933. According to his testimony, when he was coming off watch to go to his quarters, he tried to pass through the door which opened from the deckhouse, where his quarters were situated, on the starboard deck. The door was stuck and hard to open. He said: "I turned the knob and pulled on it several times as hard as I could pull it, and finally the knob pulled off, and I went backwards * * * and I fell on No. 2 hatch, striking my right hip on the clamp on the forward corner of No. 2 hatch."
He offered testimony tending to show that as a result his hip became black and blue and painful, that soon a lump appeared where he had struck his hip on the hatch clamp, and that he was advised to have the growth removed. It proved to be a malignant tumor known as a sarcoma, from which he died shortly after recovery of the judgment in this case.
Sellon's story of the pulling off of the doorknob was confirmed by the testimony of Norman Graham, Clyde Hickman, and Donald Morrison, members of the crew of the Scandrett. Medical experts testified that the sarcoma was caused by his striking his hip on the hatch when the door handle gave way.
McGillevery, the master of the Scandrett, testified that at the time of the accident Sellon never mentioned having any trouble with the door or knob, but the next day said to him: "It is a wonder that hatch clamp didn't go through my hip. I fell on the ice and hit my hip on the hatch clamp."
The respondent adduced testimony to the effect that the doorknob could not have been pulled off, and indeed it is impossible to see how a knob like the one produced should not remain fast if it was screwed up to the shoulder. But the door was not produced and the knob which was put in evidence was not identified other than by evidence which was at best hearsay as having been on the door at the time of the accident. Moreover, even if the knob which the jury found was pulled off by Sellon was the one produced at the trial, the jury was not obliged to find that the knob and lock were still in the same condition and had not been repaired nor fitted with new parts since the accident. But, whatever may have been the cause for the pulling off of the knob, a jury might find that a steamer having a door so stuck or jammed that an unusual force had to be applied to open it and a doorknob that gave way under the strain of pulling was an unseaworthy vessel and that the unseaworthiness was the proximate cause of libelant's injuries.
Judge Rippey submitted special questions to the jury in answer to which it returned a special verdict. Their answers were:
(1) The accident and injury occurred in the way libelant has asserted.
(2) The respondent failed in its duty to furnish libelant a vessel on this voyage which commenced at Duluth on November 12, 1933, in a seaworthy condition.
(3) Such failure was due to lack of competent and efficient inspection.
(4) Such unseaworthiness was due to improper construction and use of the starboard outboard door and its hangings and setting or housing, or either.
(5) Such unseaworthiness was due to defective construction or condition of the lock or its parts.
(6) The improper construction of the door, its hangings, setting or housing, was a proximate cause of the accident.
*710 (7) The defective construction or condition of the lock or its parts was a proximate cause of the accident.
(8) The defective construction of the door or the defective construction or condition of the lock or its parts was open and observable to a man in the exercise of ordinary care and prudence.
(9) The defective condition of the door was not latent or hidden so that it was not discoverable by ordinary inspection by competent inspectors.
(10) The defective construction or condition of the lock or its parts was hidden and latent and not discoverable by ordinary inspection by competent inspectors.
(10½) Libelant's condition is the result of the accident.
(11) Libelant's damages under the first cause of action are $21,166.67 gross.
(12) Libelant was aware of the improper construction and use of the door and its hangings and setting or housing or either.
(13) Libelant was not aware of the condition of the lock or its parts.
(14) Libelant was guilty of negligence contributing to his accident.
(15) His negligence contributed to his injuries to the extent of 30 per cent.
(16) The jury finds for libelant on the first cause of action $14,816.67 net.
(17) The jury finds for libelant on the second cause of action $683.
The court charged that: "Here proof of defect on the ship's starboard door, if any existed, is insufficient to charge the respondent with negligence, but it must be shown by a preponderance of the credible evidence that the respondent knew or ought to have known in the exercise of reasonable or ordinary care of the defect." In other words, according to the charge, the basis of liability was negligence, and there is doubt whether the jury found any negligence in respect to the knob in view of the finding in answer to question 10 that the defective condition of the lock and its parts was hidden and latent and not discoverable by ordinary inspection by competent inspectors. Under the charge, if the basis of liability was failure to inspect the knob properly and the jury found that the defect was not ascertainable by a competent inspection, there could be no recovery because of a neglect to inspect. In other words, the answer to question 10 would seem to preclude a recovery on the ground of negligence. We think, however, that the findings of the jury that the respondent failed to furnish libelant with a vessel in a seaworthy condition, and that this failure was the proximate cause of the accident, were sufficient to support the verdict.
Under the English law, in the absence of a statute, a seaman had no right of indemnity for injuries caused by defective appliances or unseaworthiness. Couch v. Steel, 3 El. & Bl. 402. By the Merchants Shipping Act of 1876, 39-40 Vict. Ch. 80, § 5, there was read into every contract of service between the owner of the vessel and the seamen on board an implied obligation that the owner of the ship and the master, and every agent charged with the loading of the ship or the preparing thereof for sea, or the sending thereof to sea, shall use all reasonable means to insure the seaworthiness of the ship for the voyage at the time when the voyage commences and to keep her in a seaworthy condition for the voyage during the same.
The harsh doctrine of the English courts was disapproved of in the American decisions in which it was held that there is an engagement that the ship shall be furnished with all the customary requisites for navigation, or, as the term is, shall be found seaworthy. Dixon v. The Cyrus (D.C.Pa. 1789) 2 Pet.Adm. 407, 411, Fed.Cas.No. 3,930; Halverson v. Nisen, 3 Sawy. 562, Fed.Cas.No.5,970; The Noddleburn (D.C.) 28 F. 855; The Lizzie Frank (D.C.) 31 F. 477.
This is not an action under the Jones Act (41 Stat. 988) founded on negligence. The libelant is invoking a remedy based on unseaworthiness or defective condition of the vessel or her equipment. In such a case the liability for any injuries arising out of the neglect to supply a seaworthy vessel is not dependent on the exercise of reasonable care but is absolute. This, we think, follows from The Osceola, 189 U.S. 158, 175, 23 S.Ct. 483, 47 L.Ed. 760; Chelentis v. Luckenbach S. S. Co., 247 U.S. 372, 379, 381, 38 S.Ct. 501, 62 L.Ed. 1171; Carlisle Packing Co. v. Sandanger, 259 U.S. 255, 259, 42 S.Ct. 475, 476, 66 L.Ed. 927; Pacific S. S. Co. v. Peterson, 278 U.S. 130, 134, 49 S.Ct. 75, 76, 73 L.Ed. 220; The Arizona v. Anelich, 298 U.S. 110, 119-121, 56 S.Ct. 707, 709, 710, 80 L.Ed. 1075. See, also, the Edwin I. Morrison, 153 U.S. 199, 14 S.Ct. 823, 38 L.Ed. 688; and Storgard v. France and Canada Steamship Corp. (C.C.A.) 263 F. 545, certiorari denied 252 U.S. 585, 40 S.Ct. *711 394, 64 L.Ed. 729. It is true that in some suits brought to recover damages for injuries arising out of an unseaworthy vessel the cause of action has been treated as based on negligence. Such was the case of Burton v. Greig, 271 F. 271, 272, decided by the Circuit Court of Appeals of the Fifth Circuit. But in Sabine Towing Co. v. Brennan (C.C.A.) 72 F.(2d) 490, 494, certiorari denied 293 U.S. 611, 55 S.Ct. 141, 79 L.Ed. 701, Judge Hutcheson, writing for the majority, said that there is a duty of shipowners to their seamen to see that the ship is seaworthy and her equipment in safe condition for use when she starts on her voyage and that such duty "as to injuries, for which the general maritime law provides recovery, is absolute." It is possible that the reference in The Tawmie, 80 F.(2d) 792 (C.C.A.5) to Burton v. Greig, supra, may be thought to show that the statements of Judge Hutcheson in Sabine Towing Co. v. Brennan, supra, have been modified, but the point here was not involved in The Tawmie because there the court found that the appliance was not defective and that the acts of the libelant were the sole proximate cause of his injury.
In our opinion the libelant had a right of indemnity for injuries arising from an unseaworthy ship even though there was no means of anticipating trouble.
The ship is not freed from liability by mere due diligence to render her seaworthy as may be the case under the Harter Act (46 U.S.C.A. §§ 190-195) where loss results from faults in navigation, but under the maritime law there is an absolute obligation to provide a seaworthy vessel and, in default thereof, liability follows for any injuries caused by breach of the obligation. Nor does this seem an unduly harsh imposition. A ship is an instrumentality full of internal hazards aggravated, if not created, by the uses to which she is put. It seems to us that everything is to be said for holding her absolutely liable to her crew for injuries arising from defects in her hull and equipment. The liability can be covered by insurance and is better treated as an expense of the business than one left to an uncertain determination of courts in actions to recover for negligence.
The contention that the libelant's failure to inspect was the proximate cause of the injury is without basis. At best he may be said to have been guilty of contributory negligence and the jury so found and mitigated the damages he had suffered, as may be done under the maritime law. The Arizona v. Anelich, 298 U.S. 110, 122, 56 S.Ct. 707, 711, 80 L.Ed. 1075.
Though the findings of fact do not rest upon the surest foundation, we think there was sufficient evidence to justify a verdict and that the judgment should stand.
Judgment affirmed.