BOOTH STEAMSHIP CO., Ltd., Defendant and Third Party Plaintiff-Appellant,

v.

MEIER & OELHAF CO., Third Party Defendant-Appellee.

No. 42, Docket 25104.

United States Court of Appeals Second Circuit.

Argued Nov. 10, 1958.

Decided Dec. 29, 1958.

William P. Kain, Jr., New York City (J. Ward O'Neill and Haight, Gardner, Poor & Havens, New York City, on the brief), for plaintiff-appellant.

Joseph Arthur Cohen, New York City (Sidney A. Schwartz and Alexander, Ash & Schwartz, New York City, on the brief), for defendant-appellee.

Before HINCKS, LUMBARD and MOORE, Circuit Judges.

LUMBARD, Circuit Judge.

Appellant, Booth Steamship Co., seeks reversal of Judge Dimock's dismissal of its third party complaint against appellee Meier & Oelhaf Co., machinists, in which it claimed indemnity from whatever sum might be awarded against it in the main action on behalf of the plaintiff, an employee of Meier & Oelhaf, for injuries he sustained while engaged in engine repair work aboard appellant's ves-

sel, the Dominic. The judgment in the main action is not contested here. The primary issues presented for decision are (1) whether the oral agreement between Booth and Meier gave rise to an implied warranty by Meier that the work to be done would be done safely, and (2) whether if such a warranty is implied, liability under it was incurred to Booth when equipment supplied by Meier broke without Meier's fault causing the injury for which plaintiff recovered from Booth. We answer both questions in the affirmative, and we therefore remand the third party action for trial on the contested issue of the terms of the agreement. There can be no question as to jurisdiction on the third party action. as Booth is an English corporation and Meier is a New York corporation.

The undisputed facts are as follows. Pursuant to an unwritten agreement between them, Meier undertook to overhaul the engines on Booth's vessel, the Dominic. One of the first steps in the execution of the work was the extraction of tight fitting cylinder liners from the engine block, and this was undertaken by means of extracting equipment consisting essentially of a rigid bar, or strongback, which was attached to the liner, and a jack, which was used to raise the liner by raising the strongback. Because the lifting arm of the jack was relatively short it was necessary periodically to suspend the strongback holding the liner from a wire strap while the jack itself was lifted up. It was while the strongback was so suspended that the strap parted, allowing the strongback to fall and sever the thumb of the plaintiff, who was engaged in elevating the jack itself for further lifting.

Although the parties did dispute the question of which of them supplied or was responsible to supply the defective strap, the district court found the resolution of the issue irrelevant to the liabilities involved, and instructed the jury not to consider the question. The record reveals, however, that there was sufficient evidence on this issue for it to be sent to the jury if it was in fact relevant to the action.

From the record it appears, and both parties agree, that the plaintiff's injury was not the result of negligence of any of the parties. A count in negligence was therefore dismissed and the plaintiff's action went to the jury only on the issue of the unseaworthiness of the vessel, for which he recovered. Judge Dimock dismissed the third-party action because he held that no proof of fault on the part of Meier had been introduced, and that failing such proof Booth could not recover in the absence of an express contract of indemnity. The finding that such proof was absent is not contested here. Therefore it is established and not contested on this appeal that the defect in the wire which rendered the vessel unseaworthy was not one which could have been detected by a visual examination in the exercise of ordinary prudence.

■■ At the outset we are confronted with the question of the source of the law which governs the implied terms of agreements of independent contractors to do repair work on vessels. It has been long established that contracts for the repair of vessels are maritime contracts. North Pac. S. S. Co. v. Hall Bros. Co., 1919, 249 U.S. 119, 128–129, 39 S.Ct. 221, 63 L.Ed. 510; The General Smith, 1819, 4 Wheat. 438, 17 U.S. 438, 4 L.Ed. 609. In the two recent cases in which the Supreme Court announced and discussed the implied warranty of workmanlike service it evidently assumed the federal character of the law to be applied to maritime service contracts, since it did not in any way advert to state law. See Weyerhauser S. S. Co. v. Nacirema Operating Co., 1958, 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491; Ryan Stevedoring Co. v. Pan-Atlantic S. S. Co., 1956, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133. Moreover, we decided a closely related question of the source of law in A/S J. Ludwig Mowinckels Rederi v. Commercial Stevedoring Co., 2 Cir., 1958, 256 F. 2d 227, where we held that an express indemnity clause in a contract between a stevedoring company and shipowner

was governed by federal law, despite the Supreme Court's holding in Wilburn Boat Co. v. Fireman's Fund Ins. Co., 1955, 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337, that although federal competence existed state law would govern a contract of marine insurance. The reasons which then sufficed to distinguish contracts of insurance from express indemnity clauses in maritime service contracts apply with equal vigor to implied warranties in the same contracts. Accordingly we hold that federal maritime law governs the construction of the agreement here in issue.

■■ The appellee has argued that since there was no written contract governing the services it performed, no warranty may be implied. It points to the fact that in both the Ryan and Weyerhauser cases there was written evidence of the stevedoring contracts, and in each the Supreme Court construed the language of the undertaking. We find no merit in this contention. It cannot be disputed that the services performed were carried out pursuant to an agreement between Booth and Meier. That the terms of the agreement may have been oral, or implied from the course of dealing betwen the parties and custom of the trade, or part oral and part according to custom, can make no difference. The warranty here involved is an incident of the agreement, "it is [appellee's] warranty of workmanlike service that is comparable to a manufacturer's warranty of the soundness of its manufactured product." Ryan, supra, 350 U.S. at pages 133–134, 76 S.Ct. at page 237. The way in which that contract was arrived at or preserved is irrelevant. Of course, in this case there is a substantial dispute as to the terms of the agreement since the parties differ as to which of them was obligated to, or in fact did, supply the defective strap. But this is simply an issue for the trier of fact, and that it must be resolved upon oral evidence is irrelevant. On this appeal we must and do assume that as alleged it was the appellee who was obligated to and did supply the strap, and that it undertook to

do the required repairs on appellant's engines. In such a case the warranty of workmanlike service recognized in the Ryan case arises.

■ The final question is therefore whether on the agreed facts regarding the occurrence of the plaintiff's injury, the implied warranty was breached. The dismissal of the plaintiff's negligence count, and the absence of proof of negligence on the part of Meier, establishes that the defect in the strap which proximately caused the injury was latent and not discoverable on visual inspection. The question therefore is whether a contractor who undertakes to do work aboard a vessel and to supply the equipment essential to the job, and who takes over control of the work to be performed, is liable for the damages incurred by the owner when the contractor's employee is injured because of an unseaworthy condition resulting from the presence of defective equipment which the contractor supplied without fault. This question was not involved in either the Ryan or Weyerhauser cases, supra, since in each of those cases the non-discovery of the cause of the injury constituted a negligent omission of one of the parties. But we do not believe that these cases exclude the existence of liability without fault as an element of the warranty of workmanlike service in appropriate cases.

Appellant has cited many cases in the federal, state and foreign courts which establish that a supplier of chattels, a bailor or lessor for example, impliedly warrants the suitability of the chattel for the use for which it is supplied. See, e. g., Bethlehem Shipbuilding Corp. v. Joseph Gutradt Co., 9 Cir., 1926, 10 F.2d 769; Boston Woven Hose & Rubber Co. v. Kendall, 1901, 178 Mass. 232, 59 N.E. 657, 51 L.R.A. 781 (Holmes, C. J.); Hoisting Engine Sales v. Hart, 1923, 237 N.Y. 30, 142 N.E. 342, 31 A.L.R. 536; Alaska S. S. Co. v. Pacific Coast Gypsum Co., 1912, 71 Wash. 359, 128 P. 654; Mowbray v. Merryweather [1895] 2 Q.B. 640. In not one of these cases, however, was the injury producing defect one

which would not have been disclosed on careful visual inspection. In the Mowbray case it was stipulated that the plaintiff's failure to detect the defect was negligent, and in the others the fact that the defect was not hidden is equally clear. The point of concern in each case appears to have been whether the party suing for indemnity could recover despite his own possibly negligent failure to detect the flaw; and in all it was held that he could so recover. But in none was the court required to determine whether an injury produced by a hidden flaw would itself constitute a breach of the implied warranty. In Hoisting Engine Sales the New York court characterized the supplier's contract duty as at least one of "reasonable care and skill," and declined to decide whether the warranty might also be as absolute as warranties in the law of sales.

■ The implied warranty of suitability for a particular use made by manufacturers and retailers is generally considered absolute, however, and is not avoided by the fact that in the exercise of ordinary care the defendant could not discover the injury-causing defect. See 1 Williston on Sales § 237 (Rev.Ed.1948 and Supp.1958). It has repeatedly been suggested that the liabilities of suppliers should be co-extensive with those of the law of sales. See 4 Williston on Contracts § 1041 (1936 Ed.); 2 Harper and James, The Law of Torts, § 28.19 (1956); Prosser on Torts 496 (2d Ed.1955). In Shamrock Towing Co. v. Fitcher Steel Corp., 2 Cir., 1946, 155 F.2d 69 we stated in dictum that the warranty of a supplier of marine equipment was as absolute as the maritime warranty of seaworthiness, see The H. A. Scandrett, 2 Cir., 1937, 87 F.2d 708; that it therefore made no difference whether a defect was discoverable; that as a result both warranties would be breached in the event that the chattel supplied proved inadequate to the purpose for which it was supplied under normal conditions of use. We see no reason to alter that opinion.

Like the manufacturer or retailer the supplier profits from the bailment or lease of his equipment. Although he is unable to prevent defects arising in the course of manufacture, his expert knowledge of the characteristics of the equipment in use should enable him to detect them more readily than the user. It is therefore not less reasonable as an incident of his contract to charge him with the duty of making tests, the omission of which would not constitute negligence, than it is to charge the manufacturer or retailer with a similar responsibility. We think that this is particularly true when the chattel is supplied, as it presumably was here, in the partial fulfillment of a general undertaking to make repairs. In such circumstances the hirer defers to the special qualifications of the contractor in both the selection and use of the equipment. Relying on the supplier's control of the work and with confidence in the supplier's expert knowledge and competence, he makes at most only a routine inspection of the equipment employed. To say that the supplier warrants the equipment merely confirms the customary reliance which flows from such a relationship and which affords an appropriate remedy.

Applying general principles to the facts of this case, we find that the defect which caused the plaintiff's injury was not detectable by the ordinary visual inspection which the vessel's officers on the scene may be expected to make. Such latent defects in wire as are undetectable on visual inspection may result from improper manufacture or from fatigue resulting from use over a period of time. They may perhaps be discovered by subjecting the equipment to appropriate tests with safety factors in excess of the contemplated undertaking. Furthermore, it is the supplier and not the shipowner who knows the actual history of prior use of the equipment. He alone is in the position to establish such retirement schedules or periodic retests as will best prevent the development of visually undetectable flaws.

Accordingly we hold that if the contractor undertook to do the work of repair of the vessel's engines, and if he sup-

plied the equipment which failed in the course of the use for which it was supplied, then the failure constituted a breach of the contractor's implied warranty of workmanlike service and rendered him liable to indemnify the owner for damages paid to the contractor's employee on account of injuries resulting directly from the failure.

Reversed and remanded for further proceedings not inconsistent with this opinion.