ITALIA SOCIETA PER AZIONI di
NAVIGAZIONE, Appellant,

v.

OREGON STEVEDORING COMPANY,
Inc., Appellee.

No. 17616.

United States Court of Appeals
Ninth Circuit.

Oct. 25, 1962.

Rehearing Denied Dec. 6, 1962.

Jertberg, Circuit Judge, dissented.

Wood, Wood, Tatum, Mosser & Brooke, Erskine Wood, and Erskine B. Wood, Portland, Or., for appellant.

Gray, Fredrickson & Heath, and Floyd A. Fredrickson, Portland, Or., for appellee.

Before BARNES, HAMLIN and JERTBERG, Circuit Judges.

HAMLIN, Circuit Judge.

Appellant, Italia Societa Per Azioni di Navigazione, a shipowner, contracted with the Oregon Stevedoring Company, Inc., appellee herein, for the performance of stevedoring services on appellant's ship, the M.S. Antonio Pacinotti. On or about November 19, 1958, during

the course of stevedoring operations a longshoreman named Griffith, an employee of the stevedoring company, was injured due to a latently defective rope which had been brought onto the ship by the stevedoring company. Griffith recovered a judgment against appellant shipowner which it satisfied. Thereafter, in a separate action appellant shipowner brought suit against appellee stevedoring company claiming indemnity from appellee for the amount of the judgment which it had been required to pay Griffith. Appellant based its claim for indemnity on the ground that the stevedoring company had been negligent and had breached its warranty of workmanlike service in supplying the defective rope. The stevedoring contract contained an express warranty whereby the stevedoring company undertook to indemnify the shipowner for negligence in the performance of its services.[1] The district court found that the stevedoring company had not been negligent in any way in bringing onto the ship the rope which caused injury to the longshoreman. The district court held that the presence of the express warranty covering negligence precluded any recovery for breach of an implied warranty of workmanlike service, in essence relying on the maxim *expressio unius est exclusio alterius* (expression of one thing is the exclusion of another). Judgment was entered for the stevedoring company and the shipowner appealed to this court which has jurisdiction pursuant to 28 U.S.C.A. § 1291.

No complaint is made on this appeal of the district court's finding that the stevedoring company was not negligent. Appellant contends merely that an implied warranty of workmanlike service arose from the contractual relationship

between the parties which implied warranty placed a duty upon the stevedoring company to supply proper and seaworthy equipment. It is contended that a failure to supply seaworthy equipment is a breach of the implied warranty of workmanlike service which entitles the shipowner to indemnity for any liability it incurs resulting from the faulty equipment regardless of whether the stevedoring company was negligent in supplying the equipment. Assuming that there is an implied warranty which covers the facts of this case, the appellant shipowner argues that the mere presence of the express clause indemnifying for negligence does not preclude a recovery on the implied warranty. It will be unnecessary to consider the last contention if we determine that the warranty of workmanlike service does not include elements of liability without fault, i. e., that the stevedoring company absent negligence on its part does not warrant the suitability of the equipment which it supplies pursuant to its stevedoring contract.

We address ourselves, then, to the question whether a stevedoring company breaches its implied warranty of workmanlike service, which breach results in indemnity to the shipowner, when it supplies unseaworthy equipment to a ship on which it is to perform stevedoring services even though the stevedoring company has not been negligent in any way.

The leading case on indemnity liability for breach of the implied warranty of workmanlike service is Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956). In that case a stevedoring company had agreed to perform

---

1. The express indemnity clause read:
   The Stevedoring Company will be responsible for damage to the ship and its equipment, and for damage to cargo or loss of cargo overside, and for injury or death of any person caused by its negligence, provided, however, when such damage occurs to the ship or its equipment, or where such damage or loss occurs to cargo, the ship's officers or other author-

ized representatives call the same to the attention of the Stevedoring Company at the time of occurrence. The Steamship Company shall be responsible for injury to or death of any person or for damage to or loss of property arising through the negligence of the Steamship Company or any of its agents or employees, or by reason of the failure of ship's gear and/or equipment.

stevedoring services and one of its employees was injured during the unloading. A jury returned a verdict for the longshoreman against the shipowner. The shipowner had impleaded the stevedoring company claiming that it was entitled to full indemnity because the stevedoring company had negligently failed to stow the cargo in a safe and proper manner which negligence caused the shipowner to be liable to the longshoreman. The informal stevedoring contract made no reference to an express indemnity agreement. After rejecting the contention of the stevedoring company that indemnity was precluded by the provision in the Longshoremen's and Harbor Workers' Compensation Act which made a longshoreman's recovery of compensation his exclusive remedy against his employer,[2] the Court held that the shipowner was entitled to indemnity based on the stevedoring company's breach of its implied warranty of workmanlike service.

Prior to Ryan the Court had recognized that a stevedoring company could by contract expressly agree to indemnify the shipowner for any liability to longshoremen occasioned by the fault of the stevedoring company, American Stevedores, Inc. v. Porello, 330 U.S. 446, 67 S. Ct. 847, 91 L.Ed. 1011 (1947). Where the contract did not deal expressly with indemnity such liability arose from the stevedoring company's obligation to perform its services in a workmanlike manner. The contractual obligation was described as a "warranty of workmanlike service that is comparable to a manufacturer's warranty of the soundness of its manufactured product." The warranty "is of the essence of * * * [the] stevedoring contract."[3] In Ryan the obligation was to stow the cargo "properly and safely" and a breach of the obligation was a breach of the warranty of workmanlike service giving rise to a right in the shipowner of indemnity against the stevedoring company for money which the shipowner became liable to pay to a longshoreman on account of the breach.

Much judicial effort since Ryan has been concerned with defining the nature and scope of a stevedoring company's implied warranty of workmanlike service. But only one case, Booth S.S. Co. v. Meier & Oelhaf Co., 262 F.2d 310 (2d Cir.1958), has decided that the warranty of workmanlike service includes elements of liability without fault. In the Booth case a contractor who undertook to repair a ship brought some unseaworthy equipment on board which caused injury to a workman and as a result the shipowner was liable for unseaworthiness. Indemnity was sought from the contractor, but the district court dismissed the third-party claim of the shipowner since there had been no proof that the contractor had been negligent in supplying the equipment. On appeal the parties agreed that neither of them had been negligent, and the court stated that the question was whether the contractor could be liable for indemnity where it had supplied defective equipment without fault. Recognizing that the question had not been decided before, the court, nevertheless, did not believe that the leading cases on indemnity excluded "the existence of liability without fault as an element of the warranty of workmanlike service in appropriate cases."[4] After its discussion the court stated:

> "[We] hold that if the contractor undertook to do the work of repair of the vessel's engines, and if he supplied the equipment which failed in the course of the use for which it was supplied, then the failure constituted a breach of the contractor's implied warranty of workmanlike service and rendered him liable to indemnify the owner for damages paid to the contractor's employee on

2. Longshoremen's and Harbor Workers' Compensation Act, § 5, 33 U.S.C.A. § 905.

3. 350 U.S. at 133–134, 76 S.Ct. at 237.

4. 262 F.2d at 313. The court did not intimate what it meant by "appropriate cases".

account of injuries resulting directly from the failure." [5]

Appellant shipowner in the instant case urges us to follow the Second Circuit's Booth decision and therefore hold the stevedoring company liable for indemnity for bringing onto the ship a defective rope even though the stevedoring company was not negligent in any way. Appellee stevedoring company argues that some negligence of the stevedoring company is required to constitute a breach of its implied warranty of workmanlike service. Appellee would also have us distinguish Booth from the instant case on the ground that Booth involved a repairman whereas this case involves a stevedoring company. We consider Booth to be indistinguishable from this case on the ground urged or any other. In the context of this case a repairman cannot be distinguished from a stevedoring company. Any distinction in kind is without legal significance. However, we find ourselves in disagreement with the result reached in Booth that non-negligent action can give rise to indemnity liability.[6] Thus, we refuse to follow the Second Circuit on the point here involved.

It is our belief that the term "warranty of *workmanlike* service" is not properly susceptible to an interpretation which makes an act done free of negligence and totally without fault the basis of a breach of the warranty. We think the word "workmanlike" means a "proper", "safe" and "non-negligent" manner of doing something. "Workmanlike" has been defined as "skillful" or "well done"

and is said to be synonymous with "deft", "proficient" or "adept",[7] all words which connote a standard of skill similar to that associated with the reasonable man test for negligence. Cases discussing the legal meaning of "workmanlike" are replete with words and phrases of similar import.[8]

We have scrutinized the leading Supreme Court cases in the field and have found in the Court's discussion terms the repeated use of which support a conclusion that "workmanlike" describes an ordinary standard of care in the performance of a service the breach of which standard is equivalent to negligence. Thus, in the Ryan case, supra, the Court stated that the stevedoring company's contractual obligation is to stow the cargo "with reasonable safety," "properly and safely" and "in a reasonably safe manner"; the liability of the stevedoring company arises from "improper" stowage and the "failure to stow * * * 'in a reasonably safe manner' "; "competency and safety of stowage are inescapable elements of the service undertaken"; the recovery of the shipowner on his contract may turn upon the "standard of the performance" of the stevedoring service; and the duty of the stevedoring company is to hold the shipowner harmless from "foreseeable damages."

In Weyerhaeuser S.S. Co. v. Nacirema Operating Co., 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491 (1958), the Court held that it was error to take a case from the jury on the question of indemnity where there was evidence tending to es-

---

5. 262 F.2d at 314–315.

6. The Court in Booth felt that it was not unreasonable to require the supplier of equipment to test and inspect the materials "the omission of which would not constitute negligence." (262 F.2d at 314.) However, what the court was articulating was a basis for strict liability without fault and it would seem that discussion of a burden to make tests the omission of which would not be negligence is inappropriate for the reason that standards of conduct and of performance are irrelevant where strict liability is imposed. Strict

liability doesn't depend on what one does or does not do according to any set standard of care. The court's discussion would seem, rather, to be no more than an attempt to state a justification for risk-shifting from one party to another.

7. Webster's New International Dictionary 2952 (2d ed. unabridged) ("workmanlike").

8. See cases cited in 18A Words & Phrases 22 ("Good and Workmanlike Job") and 45 Words & Phrases 520 ("Workmanlike manner") (permanent ed.).

tablish negligence on the part of the stevedoring company even though the shipowner had been held liable to the longshoreman only on the basis of negligence and not for unseaworthiness of the vessel.[9] In Weyerhaeuser much language from Ryan (which is set out above) was utilized, and the Court mentioned that the contractual obligation is to perform duties "with reasonable safety"; the stevedoring company is liable if in using ship's gear it renders a "sub-standard performance."

Statements similar to those in Ryan and Weyerhaeuser appear in the three later cases where the Supreme Court has had occasion to discuss the Ryan case and liability for indemnity. Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd., 369 U.S. 355, 82 S.Ct. 780, 7 L.Ed. 2d 798 (1962); Waterman S. S. Corp. v. Dugan & McNamara, Inc., 364 U.S. 421, 81 S.Ct. 200, 5 L.Ed.2d 169 (1960); Crumady v. The Joachim Hendrik Fisser, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed. 413 (1959).

■ We are not unmindful that negligence liability and warranty liability are not identical. Negligence is a liability in tort while warranty is generally associated with contract liability.[10] Nevertheless, as indicated by the Supreme Court in Ryan the recovery of the shipowner in warranty still may turn upon a standard of performance of the stevedoring service. We believe that in the stevedoring cases the standard of performance is the same whether the ultimate liability be in tort (for negligence) or in contract (for breach of warranty).

■ Our belief is not altered by the mere fact that there can be no liability of the stevedoring company in tort. In these indemnity cases there is no liability in tort, not because the standard would be different from that of warranty, but rather, because prior to Ryan the Supreme Court had decided that there could be no contribution, based on comparative fault, between shipowner and stevedoring company in respect of seamen's injuries on the ground that there had been no contribution in the common law between joint tort feasors. Halcyon Lines v. Haenn Ship Ceiling & Refitting Corp., 342 U.S. 282, 72 S.Ct. 277, 96 L.

9. The court recognized that at some point activity on the part of the shipowner would preclude its recovery of indemnity from the stevedoring company even though the stevedoring company might also be negligent in some respect. 355 U.S. at 567–568, 78 S.Ct. 438.

10. In recent history liability for breach of warranty has been associated with contract more than anything else. See Harper & James, Torts § 28.16 (1956) and Prosser, Torts § 84 (2d ed. 1955). But there is support for the proposition that warranty was originally a tort liability. Prosser, Torts 507 (2d ed. 1955). Increasingly, warranty is becoming a liability apart from tort perhaps because much of it does not necessarily depend on fault or the adherence to a standard of care; and warranty is drifting away from contract probably because many who are entitled to a recovery in warranty have no contractual relationship with the person from whom they seek to recover. Concepts of privity of contract are ever more gradually giving way to sweeping coverage of warranty. See Prosser, The Assault Upon the Citadel (Strict Liability to the Consumer), 69 Yale L.J. 1099 (1960). While the precise nature of warranty may in general be disputable, it is clear that the warranty of workmanlike service of a stevedoring company arises from contract. Of late, however, the importance of a contract between stevedoring company and shipowner (or ship in the case of a libel *in rem*) has been undermined; its presence is no longer a necessary condition to an indemnity based upon an implied warranty of workmanlike service. Waterman S.S. Corp. v. Dugan & McNamara, Inc., 364 U.S. 421, 81 S.Ct. 200 (1960); Crumady v. The Joachim Hendrik Fisser, 358 U.S. 423, 79 S.Ct. 445 (1959). In Waterman and Crumady the shipowner was allowed to recover for breach of warranty even though there was no direct contract relationship between him and the stevedoring company. However, the contract idea was adhered to since the ship or shipowner were considered to be the third-party beneficiaries of the contract between the stevedoring company and the one who contracted for its services.

Ed. 318 (1952).[11] The entire liability in tort (including liability for unseaworthiness) would rest upon the shipowner since a longshoreman's right to workmen's compensation under the Longshoremen's and Harbor Workers' Compensation Act is his exclusive remedy against the wrongdoing of his employer, the stevedoring company.[12] This latter legislative reality when juxtaposed on the rule of the Halcyon case, supra, precluded any possibility of liability of the stevedoring company in tort. If the shipowner was to be relieved at all from the onerous burden of Halcyon, liability against the stevedoring company for its wrongs would necessarily have to be predicated upon contract and not tort.[13] This background to Ryan cannot be separated from an analysis of the liability of the stevedoring company for breach of the implied warranty of workmanlike service. And when this background is kept in mind it seems reasonable to posit that the warranty of workmanlike service was intended only to impose liability in contract similar to that which would otherwise have been imposed in tort (for being negligent in the performance of stevedoring services)—not that the one (warranty) is the substitute for the other (tort) but that the standard of performance in each case is the same.

The efforts of the shipowner in this case to hold the stevedoring company for action done without fault is an attempt to impose upon the stevedoring company the same degree of liability for unseaworthiness as that which is imposed upon the shipowner. We see no reason in policy or otherwise why the stevedoring company should be liable for unseaworthiness insofar as that doctrine encompasses liability without fault.[14] Liability of the shipowner for unseaworthiness arises where the ship's gear is not reasonably fit for the purpose for which it is intended. Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 80 S.Ct. 926, 4 L. Ed.2d 941 (1960). The liability extends to longshoremen and other workmen who are injured while performing duties traditionally done by members of the ship's crew. Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946); Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 74 S.Ct. 202, 98 L. Ed. 143 (1953). And liability is imposed upon the shipowner even where the equipment which causes injury to a longshoreman is brought onto the ship by his employer, the stevedoring company. Alaska S.S. Co. v. Petterson, 347 U.S. 396, 74 S.Ct. 601, 98 L.Ed. 798 (1954). Just as the longshoreman is entitled to the warranty of seaworthiness while performing duties traditionally done by the ship's crew, the liability imposed with respect to equipment brought on board by the stevedoring company or other contractor would seem to rest upon the similar proposition that the gear was traditionally that which belonged to the ship.

11. In Halcyon a shipowner was sued by a longshoreman and the shipowner impleaded the employer stevedoring company. A jury determined that the shipowner had been 25% responsible for the longshoreman's injuries and that the stevedoring company had been 75% responsible. The district court equally divided the damages analogizing to collision cases. The Supreme Court held that there could be no contribution which led to the result that shipowner who was only 25% responsible was liable for the whole while the 75% responsible stevedoring company was not liable at all.

12. See note 2 supra.

13. See Gilmore & Black, Admiralty 366–374 (1957).

14. Whether a particular set of facts gives rise to an action for negligence alone, for unseaworthiness alone or for both negligence and unseaworthiness is often an extremely difficult question. It has become quite evident that there is a very minute area, if any, which is negligence but not at the same time unseaworthiness. The continued existence of such an area is largely theoretical. The unseaworthy whale has all but swallowed the negligent Jonah. See generally Gilmore & Black, Admiralty §§ 6–34—6–44 (1957) and Tetreault, Seamen, Seaworthiness and the Rights of Harbor Workers, 39 Cornell L.Q. 381 (1954).

But the liability for unseaworthiness is the shipowner's not the stevedoring company's. The liability is absolute and non-delegable. Mitchell v. Trawler Racer, Inc., supra; Seas Shipping Co. v. Sieracki, supra; Mahnich v. Southern S. S. Co., 321 U.S. 96, 64 S.Ct. 455, 88 L.Ed. 561 (1944).

■ The Supreme Court has recognized that the respective duties of the stevedoring company and the shipowner to the longshoreman rest upon different principles than do their liabilities with respect to each other.[15] In view of this factor there would seem to be no necessary reason why a shipowner could not be liable without the stevedoring company always being liable at the same time to the shipowner. The shipowner is liable to the longshoreman for negligence and unseaworthiness and the stevedoring company is liable to the longshoreman for workmen's compensation, but this is not to say that as between the two the stevedoring company is liable to the same extent and upon the same basis as the shipowner. The stevedoring company's liability arises only from its contractual arrangement with the shipowner.[16] We believe the stevedoring company's warranty of workmanlike service is only breached (giving rise to indemnity) where it has rendered a substandard, negligent performance. Such negligence on the part of the stevedoring company can of course give rise to unseaworthiness liability of the shipowner and in that situation there would be indemnity.[17] But we believe indemnity liability cannot arise from non-negligent actions done entirely without fault. The liability of the shipowner to the long-

shoreman for unseaworthiness arises from a policy to protect the longshoreman at the expense of the shipowner who presumably is better able to shoulder the risk of loss. No doubt this policy in part received impetus from the historical dogma that seamen are the wards of the admiralty court. But the stevedoring company is not liable for unseaworthiness, and we can see no policy comparable to that which gives rise to the shipowner's liability which would compel an indemnity in favor of the shipowner where the stevedoring company has not been negligent.

We do not believe the Supreme Court's characterization of the warranty of workmanlike service as being "comparable to a manufacturer's warranty of the soundness of its manufactured product"[18] precludes the result reached in this case. It must be recognized that the warranty of workmanlike service is in some sense different from the manufacturer's warranty in that the former involves the performance of a service—unloading of vessels—while the latter attaches to a product that is made. Moreover, although some warranties result in strict liability of the manufacturer, certainly not all of them do.[19] We think a fair interpretation of all the language used in the leading cases (and the results reached in the plethora of other cases) is that the stevedoring companies are not liable for breach of the warranty of workmanlike service in the absence of some negligence.

We realize that stevedoring companies and shipowners enjoy considerable freedom of contract with respect to liability for indemnity, and we have no doubt that

15. See Weyerhaeuser S.S. Co. v. Nacirema Operating Co., 355 U.S. 563, 568, 79 S.Ct. 438 (1958) and Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., 350 U.S. 124, 134, 76 S.Ct. 232 (1956).

16. But see note 10 supra in connection with Waterman S.S. Corp. v. Dugan & McNamara, Inc., 364 U.S. 421, 81 S.Ct. 200 (1960) and Crumady v. The Joachim Hendrik Fisser, 358 U.S. 423, 79 S.Ct. 455 (1959).

17. E. g., Crumady v. The Joachim Hendrik Fisser, supra note 16.

18. Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., 350 U.S. 124, 133–134, 76 S.Ct. 232, 237 (1956).

19. See generally Prosser, The Assault Upon the Citadel (Strict Liability to the Consumer), 69 Yale L.J. 1099 (1960).

agreements could be made to cover expressly the action which we have said does not come within the implied warranty of workmanlike service. American Stevedores, Inc. v. Porello, 330 U.S. 446, 67 S.Ct. 847 (1947).

In view of our decision that the warranty of workmanlike service could not have been breached without some negligence on the part of the stevedoring company (i. e., that there was no implied warranty covering liability without fault), we find it unnecessary to decide whether the district court was correct in holding that the presence of the express contract clause indemnifying for negligence precluded any implied warranty.

Judgment affirmed.

JERTBERG, Circuit Judge (dissenting).

I respectfully dissent. I do so only because of my view that the opinion of my brethren reaches a wrong result in an important and unsettled area of Admiralty law and one which will have far-reaching consequences.

The majority members of the panel conclude that the warranty of workmanlike service could not have been breached without some negligence on the part of the Stevedoring Company and found it unnecessary to decide whether the district court was correct in holding that the express contract clause indemnifying for negligence precluded any implied warranty.

Since I believe that the district court's dismissal of appellant's libel should be set aside and the cause remanded to the district court with instructions to enter judgment in its favor against appellee for the amount of the indemnity sought, it becomes necessary for me to first consider the issue not passed upon in the majority opinion.

The Seattle hatch tent and tent tie-down rope involved were owned, supplied, rigged and exclusively controlled by appellee. The rope in question was permanently spliced to an eye in the tent. At the time of the accident, Griffith and his work partner had passed the rope through a deck fixture and back up and through the splice by which the rope was permanently attached to the tent. Griffith was pulling on the free end of the rope when it broke. It broke between the point where Griffith was holding it and the point where it ran through the splice. The securing of the tent and the manner in which the tent and tent rope were being secured were entirely and exclusively within the supervision and control of appellee. When the rope broke it was being used for the purpose and in the manner for which it was supplied by appellee for use by its employees. The rope was a proper type of rope for use as a tent rope and there was no evidence that it was in an unsatisfactory condition. When the rope broke it was defective and unsatisfactory for the purpose for which it was intended.

The provisions of the stevedoring contract existing between appellant and appellee which are relevant and pertinent on this appeal provide:

"(a) That the Stevedoring Company will act as stevedores, and that they will with all possible dispatch, load and/or discharge all cargoes of vessels owned, chartered, controlled, or managed by the Steamship Company at all Columbia and Willamette River ports as directed. And it is agreed that the Steamship Company will grant to the said Stevedoring Company the exclusive rights of handling all such cargoes as before mentioned under the terms of this agreement, and will pay for the work done by the Stevedoring Company in lawful money of the United States at the rates set forth in Schedule 'A,' attached hereto and made a part hereof;

"(b) That the Stevedoring Company will furnish all necessary labor and supervision and all ordinary gear for the performance of the services described in this contract, including winch drivers and usual appliances used for stevedoring;

"(c) That the Steamship Company will furnish suitable booms, winches, blocks, and falls, steam and/or power and lights and will maintain the same in safe and efficient working conditions during the progress of the work; and

"(d) That the Stevedoring Company will be responsible for damage to the ship and its equipment, and for damage to cargo or loss of cargo overside, and for injury to or death of any person caused by its negligence * * *. The Steamship Company shall be responsible for injury to or death of any person or for any damage to or loss of property arising through the negligence of the Steamship Company or any of its agents or employees, or by reason of the failure of ship's gear and/or equipment."

I shall first consider appellee's contention that appellant's right to indemnity must be determined from the provisions of the written stevedoring contract. Appellee argues that since the contract provides that appellee shall be responsible "for injury to or death of any person caused by its negligence" and since the district court found that appellee was not negligent in furnishing the defective rope, the decree of the district court dismissing appellant's libel must be affirmed.

The district court found that "there is no evidence, outside of the written contract itself, as to the intent of the parties with respect to construction or interpretation of the stevedoring contract, or with respect to implied obligations under said contract." Thus, there is presented as a question of law whether under the contract the liability of appellee is limited to negligence and thereby negatives the existence of any obligation on the part of appellee to perform the stevedoring services in a workmanlike manner.

Was appellee under an obligation to render workmanlike service to appellant under the terms of the contract? It is to be noted that appellee agreed to act as stevedore and to load and discharge all cargoes of vessels owned, controlled, or managed by appellee at Columbia and Willamette River ports as directed. It is also to be noted that the contract does not contain an express agreement of indemnity unless the last quoted provision of the contract, properly construed, limits the liability of appellee to its negligence and bars indemnity.

Since the decision of the Supreme Court in Ryan Stevedoring Co., Inc. v. Pan-Atlantic Steamship Corp., 350 U.S. 124, 76 S.Ct. 232 (1956), absent an express agreement of indemnity, it has been settled law that an agreement between a shipowner and a stevedore to perform loading and discharging of cargo includes the implied-in-fact obligation to render workmanlike service. In Ryan, a stevedoring company agreed to perform stevedoring services for the shipowner. The agreement was evidenced by letters, but without a formal stevedoring contract or an express indemnity agreement. One of the members of the stevedoring company was injured during the unloading. A jury returned a verdict for the longshoreman against the shipowner. The shipowner had impleaded the stevedoring company claiming that it was entitled to full indemnity because the stevedoring company had negligently failed to stow the cargo in a safe and proper manner which negligence caused the shipowner to be liable to the longshoreman. The Court held that the shipowner was entitled to indemnity based on the stevedoring company's breach of its implied warranty of workmanlike service. In the course of its opinion, the Court stated, at p. 133, 76 S.Ct. at p. 237:

"The shipowner here holds petitioner's uncontroverted agreement to perform all of the shipowner's stevedoring operations at the time and place where the cargo in question was loaded. That agreement necessarily includes petitioner's obligation not only to stow the pulp rolls, but to stow them properly and safely. Competency and safety of

stowage are inescapable elements of the service undertaken."

In Weyerhaeuser S.S. Co. v. Nacirema Co., 355 U.S. 563, 78 S.Ct. 438 (1958), the Supreme Court held that it was error to take a case from the jury on the question of indemnity where there was evidence tending to establish negligence on the part of the stevedoring company even though the shipowner had been held liable to the longshoreman only on the basis of negligence and not for unseaworthiness of the vessel. The stevedoring contract contained no express indemnity clause. The Supreme Court held that the stevedoring company's implied-in-fact contractual obligation to perform its duties with reasonable safety embraced not only the handling of cargo but the use by the stevedore of ship's gear. In the course of its opinion, the Court stated, at p. 567, 78 S.Ct. at p. 441:

"We believe that respondent's [stevedoring company] contractual obligation to perform its duties with reasonable safety related not only to the handling of cargo, as in Ryan, but also to the use of equipment incidental thereto, such as the winch shelter involved here."

The implied-in-fact obligation of the stevedore to render service in a workmanlike manner is not based upon tort. As stated by the Supreme Court in Ryan, supra, 350 U.S. at p. 133, 76 S.Ct. at p. 237:

"This obligation is not a quasi-contractual obligation implied in law or arising out of a noncontractual relationship. It is of the essence of petitioner's stevedoring contract. It is petitioner's warranty of workmanlike service that is comparable to a manufacturer's warranty of the soundness of its manufactured product. The shipowner's action is not changed from one for a breach of contract to one for a tort simply because recovery may turn upon the standard of the performance of petitioner's stevedoring service."

In Crumady v. The J. H. Fisser, 358 U.S. 423, at pp. 428–429, 79 S.Ct. 445 at p. 448 (1959), the Supreme Court stated:

"A majority of the Court ruled in Ryan Co. v. Pan-Atlantic Corp., 350 U.S. 124, [76 S.Ct. 232,] that where a shipowner and stevedoring company entered into a service agreement, the former was entitled to indemnification for all damages it sustained as a result of the stevedoring company's breach of its warranty of workmanlike service. And see Weyerhaeuser S.S. Co. v. Nacirema Co., 355 U.S. 563 [79 S.Ct. 438]. The facts here are different from those in the Ryan case, in that this vessel had been chartered by its owners to Ovido Compania Naviera S. A. Panama, which company entered into the service agreement with this stevedoring company. The contract, however, mentioned the name of the vessel on which the work was to be done and contained an agreement on the part of the stevedoring company 'to faithfully furnish such stevedoring services.'

"We think this case is governed by the principle announced in the Ryan case. The warranty which a stevedore owes when he goes aboard a vessel to perform services is plainly for the benefit of the vessel whether the vessel's owners are parties to the contract or not. That is enough to bring the vessel into the zone of modern law that recognizes rights in third-party beneficiaries. Restatement, Law of Contracts, § 133. Moreover, as we said in the Ryan case, 'competency and safety of stowage are inescapable elements of the service undertaken.' 350 U. S., at 133 [76 S.Ct. at 237]. They are part of the stevedore's 'warranty of workmanlike service that is comparable to a manufacturer's warranty of the soundness of its manufactured product.' Id., [350 U.S.] at 133–134 [,76 S.Ct. at 237]. See MacPherson v. Buick Motor Co., 217

N.Y. 382, 111 N.E. 1050, [L.R.A. 1916F, 696.]"

See also Waterman Co. v. Dugan & McNamara, 364 U.S. 421, 81 S.Ct. 200 (1960), wherein it was held that a stevedoring company was liable to the shipowner for indemnity even though there was no privity of contract between them and regardless of whether the injured longshoreman asserted his claim in an *in rem* or an *in personam* proceeding, since the stevedore's warranty of workmanlike service aboard the ship was for the benefit of the ship and its owner as well as the stevedore.

I am of the view that the provision of the stevedoring contract under which appellee agrees to be responsible "for injury to or death of any person caused by its negligence," which statement is simply an affirmation of an existing duty on the part of appellee, does not exclude from the stevedoring contract the implied-in-fact obligation to perform stevedoring services in a workmanlike manner, nor do I find any other provision of the contract or the contract as a whole to have any such effect. The obligation of the stevedore to indemnify the shipowner rests not upon negligence but upon contract. The contract does not limit such obligation.

The final question is whether the implied-in-fact contractual obligation of appellee to render its services in a workmanlike manner embraces within its scope the duty to see that the equipment or gear required to be and furnished for the use of its own employees in the performance of its stevedoring services and exclusively used and controlled by them, must be seaworthy and fit for the use intended. Under the contract, appellee agreed to furnish not only all necessary labor and supervision but also "all ordinary gear for the performance of the services described in this contract, including winch drivers and usual appliances used for stevedoring." There is no contention in the record that the Seattle hatch tent and tent tie-down rope were not ordinary gear which appellee was obligated to furnish under the terms of the contract.

I have found no Supreme Court decision which has occasion to pass upon the duty of a stevedoring company vis-a-vis the shipowner in respect to gear or equipment required to be and furnished by it in the performance of stevedoring services. I recognize that liability has been imposed upon a shipowner for breach of the implied warranty of seaworthiness in favor of a longshoreman whose injuries were caused aboard ship by defective gear or equipment belonging to and brought on the ship by his employer— the stevedoring company. Alaska Steamship Co., Inc. v. Petterson, 347 U.S. 396, 74 S.Ct. 601 (1954). The right of the shipowner to recover indemnity from the stevedoring company was not involved in that case. I have found no intimation in the many decisions of the Supreme Court which I have reviewed that a shipowner would be denied the right to indemnity against the stevedoring company in instances where liability has been imposed on the shipowner either for damages to person or property caused solely by defective equipment furnished by the stevedoring company and exclusively used, controlled, and supervised by it. To impose liability on the shipowner in favor of a longshoreman and to deny recovery over against the stevedoring company under such circumstances, is inequitable. Since the loss must be borne by either one or the other, it is not unfair that such loss be ultimately borne by the one best able to eliminate the hazard, to wit: the owner of the defective gear or equipment who supplied it and whose use and control over it was exclusive.

In my view, the Supreme Court decisions above cited do not exclude the existence of liability without fault as an element of the warranty of workmanlike service under the facts of this case.

In Ryan, supra, it is stated, 350 U.S. at pp. 133–134, 76 S.Ct. at p. 237:

"It is petitioner's [stevedore's] warranty of workmanlike service that is comparable to a manufac-

turer's warranty of the soundness of its manufactured product."

This statement was reaffirmed by the Supreme Court in Waterman, supra, and in Crumady, supra.

The only case passing upon this point to which attention has been directed is Booth Steamship Co. v. Meier & Oelhaf Co., 262 F.2d 310 (2d Cir.1958). The majority opinion states that Booth is indistinguishable in any significant way from the instant case but disagrees with the result reached in the Booth case. In Booth, a contractor undertook to overhaul the engines on Booth's vessel. One of the first steps in the execution of the work was the extraction of tight fitting cylinder liners from the engine block, and this was undertaken by means of extracting equipment consisting essentially of a rigid bar, or strongback, which was attached to the liner, and a jack, which was used to raise the liner by raising the strongback. Because the lifting arm of the jack was relatively short, it was necessary periodically to suspend the strongback holding the liner from a wire strap while the jack itself was lifted up. It was while the strongback was so suspended that the strap parted, allowing the strongback to fall and sever the thumb of the plaintiff, who was engaged in elevating the jack itself for further lifting.

The shipowner was held liable to the injured workman of the contractor for unseaworthiness. The shipowner sought indemnity from the contractor, but the district court dismissed the third-party claim of the shipowner since there had been no proof that the contractor had been negligent in failing to discover the defect in the strap, which defect was latent and not discoverable on visual inspection.

In the course of its opinion, the court stated, 262 F.2d at pp. 314–315:

"The implied warranty of suitability for a particular use made by manufacturers and retailers is generally considered absolute, however, and is not avoided by the fact that in the exercise of ordinary care the defendant could not discover the injury-causing defect. See 1 Williston on Sales § 237 (Rev.Ed.1948 and Supp.1958). It has repeatedly been suggested that the liabilities of suppliers should be co-extensive with those of the law of sales. See 4 Williston on Contracts § 1041 (1936 Ed.); 2 Harper and James, The Law of Torts, § 28.19 (1956); Prosser on Torts 496 (2d Ed.1955). In Shamrock Towing Co. v. Fitcher Steel Corp., 2 Cir., 1946, 155 F.2d 69 we stated in dictum that the warranty of a supplier of marine equipment was as absolute as the maritime warranty of seaworthiness, see The H. A. Scandrett, 2 Cir., 1937, 87 F.2d 708; that it therefore made no difference whether a defect was discoverable; that as a result both warranties would be breached in the event that the chattel supplied proved inadequate to the purpose for which it was supplied under normal conditions of use. We see no reason to alter that opinion.

"Like the manufacturer or retailer the supplier profits from the bailment or lease of his equipment. Although he is unable to prevent defects arising in the course of manufacture, his expert knowledge of the characteristics of the equipment in use should enable him to detect them more readily than the user. It is therefore not less reasonable as an incident of his contract to charge him with the duty of making tests, the omission of which would not constitute negligence, than it is to charge the manufacturer or retailer with a similar responsibility. We think that this is particularly true when the chattel is supplied, as it presumably was here, in the partial fulfillment of a general undertaking to make repairs. In such circumstances the hirer defers to the special qualifications of the contractor in both the selection and use of the equipment. Relying on the sup-

plier's control of the work and with confidence in the supplier's expert knowledge and competence, he makes at most only a routine inspection of the equipment employed. To say that the supplier warrants the equipment merely confirms the customary reliance which flows from such a relationship and which affords an appropriate remedy.

"Applying general principles to the facts of this case, we find that the defect which caused the plaintiff's injury was not detectable by the ordinary visual inspection which the vessel's officers on the scene may be expected to make. Such latent defects in wire as are undetectable on visual inspection may result from improper manufacture or from fatigue resulting from use over a period of time. They may perhaps be discovered by subjecting the equipment to appropriate tests with safety factors in excess of the contemplated undertaking. Furthermore, it is the supplier and not the shipowner who knows the actual history of prior use of the equipment. He alone is in the position to establish such retirement schedules or periodic retests as will best prevent the development of visually undetectable flaws.

"Accordingly we hold that if the contractor undertook to do the work of repair of the vessel's engines, and if he supplied the equipment which failed in the course of the use for which it was supplied, then the failure constituted a breach of the contractor's implied warranty of workmanlike service and rendered him liable to indemnify the owner for damages paid to the contractor's employee on account of injuries resulting directly from the failure."

I find no significant fact which distinguishes the Booth case from the instant case. Much that is said in Booth can be applied with equal force to this case. I see no policy consideration in Maritime law and no injustice in requiring a stevedore to indemnify a shipowner from a liability visited upon the shipowner solely through failure on the part of the stevedore to furnish, in connection with the performance of a stevedoring contract, equipment that is fit for the use intended.

It is to be noted that the case presented to us is that of the shipowner vis-a-vis the stevedoring company. We are not concerned with the injured longshoreman who has received compensation for his injuries, nor policy considerations which have led to a tender solicitude on the part of the Admiralty Court for injured seamen and longshoremen. The contest here is between equals and no thought should be given to which of them is more able to bear the burden.

I would set aside the decree of the district court dismissing appellant's libel and would remand the cause to the district court with instructions to enter judgment in its favor against appellee for the amount of the indemnity sought.